## THE SEVEN BROTHERS NO. 1.

(Circuit Court of Appeals, Second Circuit. February 10, 1913.)

No. 144, October Term, 1912.

SHIPPING (§ 143*)—DISCHARGE OF VESSEL—INJURY TO CARGO—FAILURE TO FURNISH COVERS—PERSONS LIABLE.

    Where the agent of a steamship company, in order to facilitate discharge, employed a lighter without covers, and agreed on behalf of himself and the steamship company to furnish covers, which he failed to

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

do, resulting in injury to the cargo from rain, the lighter was not liable in rem, but the agent was primarily, and the steamship company secondarily, liable.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. § 489; Dec. Dig. § 143.*]

Appeal from the District Court of the United States for the Southern District of New York; Learned Hand, Judge.

Libel in admiralty by Willett & Co. against the Texas City Steamship Company and lighter Seven Brothers No. 1, her tackle, etc., the Chiarello Bros. Company, and Sidney A. Metcalfe, impleaded. Judgment for libelant, and the Chiarello Bros. Company appeals. Modified.

M. A. Ryan, of New York City, for appellant.

Burlingham, Montgomery & Beecher, of New York City (Charles C. Burlingham and C. I. Clark, both of New York City, of counsel), for appellee Texas City Steamship Company.

Curtis, Mallet-Prevost & Colt, of New York City (A. H. Strickland, of New York City, of counsel), for appellee Metcalfe.

Harrington, Bigham & Englar, of New York City (D. Roger Englar, of New York City, of counsel), for appellees Willett & Co.

Before LACOMBE, COXE and WARD, Circuit Judges.

WARD, Circuit Judge. Willett & Co. filed a libel against the Texas City Steamship Company to recover $5,000 for damage by rain to a shipment of 950 bales of wool under a through bill of lading from Texas City to Boston. The wool was discharged from the respondent's steamer Ossabaw at Pier 15, into the lighter Seven Brothers No. 1, to be transported to Pier 19 North River, and there delivered to a steamer of the New England Navigation Company bound to Boston; it being the duty of the Steamship Company under the bill of lading to do this. The Steamship Company brought in the lighter as a party under the fifty-ninth rule in admiralty, charging it with liability in rem for failure to supply proper covers to protect the wool from the rain. Chiarello Bros., owners of the lighter, filed an answer and a petition to limit liability, alleging that the lighter had been hired by one Metcalfe, the agent of the Steamship Company, both knowing that she was a lumber lighter not intended to carry such cargo as wool and not provided with covers; that Metcalfe promised to supply the same; and that the damage was due to the negligence of himself and his principal, the Steamship Company, in failing to do so. They also filed a petition to bring in Metcalfe as a party under the fifty-ninth rule, alleging that he had hired the lighter with knowledge of the foregoing facts and had promised to supply her with covers, and that the damage to the wool was due to the negligence of himself and of the Texas City Steamship Company in failing to do so.

Chiarello Bros., besides owning lighters, were the regular stevedores of the Steamship Company, in charge of loading and discharging its steamers. Metcalfe was the agent of the Steamship Company in charge of obtaining lighters necessary for its use and of assigning to the lighters the places where they should lie and the cargo they should receive. He did this under the superintendence of McMahon the su-

perintendent of the Steamship Company. He also owned lighters, and it was arranged between him and the Steamship Company that he should always employ first the lighters of the Bee Line, next his own, and then those of Chiarello Bros., or any outsider. He was paid no regular salary, but was allowed for his services an office on Pier 15 free of rent, a commission of 6 per cent. on the receipts of the Bee Line lighters, all the receipts of his own lighters and nothing for lighters of Chiarello Bros. or other outsiders.

On this occasion the Steamship Company, having engaged to put the steamer on dry dock the next morning, was very anxious to discharge her cargo. Metcalfe, with McMahon, the superintendent of the Steamship Company, applied to Chiarello Bros. for lighter No. 1. They replied that she was already engaged to the Clyde Line, and, besides, was not fit to carry wool, because she had no covers. McMahon said he would get the Clyde Line to let the lighter go. Metcalfe said he would supply covers from his own lighter Charlotte and Chiarello Bros., having got the lighter released by the Clyde Line, put her at the service of the Steamship Company, and as stevedores began to load August 31st at 10 a. m., and completed the loading of the wool by 1 a. m. September 1st. Rain had been threatening from 10 p. m. of August 31st, and Luciano Chiarello, in charge of the loading, applied several times to the master of the Charlotte for covers, who refused to lend them because he had received no order from Metcalfe. Thereupon he used such covers as he could get on the steamer and on the pier, which, however, were insufficient both in number and condition. Light rain began to fall at about 1:20 a. m. and continued for 12 hours, often very heavily, resulting in the damage complained of by the libelants.

The sole charge which the Steamship Company made against the lighter was that she was at fault for not protecting the cargo with proper covers, substantially a charge of unseaworthiness. No other charge was pleaded nor developed at the trial. The District Judge, however, held the lighter primarily liable in rem because her owners had relied upon Metcalfe's personal promise to furnish covers, for which promise the Steamship Company was not responsible. He drew this conclusion from the conversation between Chiarello, Metcalfe, and McMahon, as follows:

"McMahon said in substance, 'Now Metcalfe has promised you the covers, give him the boat. If you have trouble, I will call up the Clyde Line, and ask them to release you from your engagement.' This is rather the language of one who asks another to rely upon the promise of a third person than of one who adopts such a promise as his own. It is as though McMahon said, 'Now you have Metcalfe's assurance, that should satisfy you.' Had McMahon supposed the steamer was engaged to furnish the covers, he would more naturally have said, 'Now that we have promised you the covers, give us the boat.' He was Metcalfe's superior, and would hardly have referred to an engagement which he recognized to have been made on behalf of their common principal as though it were Metcalfe's."

We think this assumes too great nicety in an ordinary water-front conversation. What was said should be construed with reference to the relation of the parties to each other and the situation they were

contracting about. The Steamship Company was in urgent need of the lighter. Metcalfe, as agent of the Steamship Company, was trying to hire her, not for himself, but for the company. Chiarello was willing to let the company have it if covers were supplied. It seems to us quite obvious that when McMahon said, "Give the lighter to him," he meant to Metcalfe as the company's agent in charge of the lightering, and that, when he said that Metcalfe would furnish the covers, he meant that he would do so for the company, and that the company for that reason would be willing to employ the lighter, although it had no covers. It is in the highest degree improbable that Metcalfe, who was acting as agent of the company, and who was entirely without interest, intended to assume a personal liability to Chiarello, or that Chiarello, who was hiring the lighter to the company, was looking to the agent personally for the covers. The presumption is that Metcalfe was promising covers for the company within his authority as agent to hire lighters, and that the Steamship Company was willing to take the lighter relying on Metcalfe to supply them.

The District Judge next proceeded to hold that the damage was really caused by the negligence of Chiarello Bros. in continuing to load after the weather became threatening, and in not returning the bales already loaded to the covered pier. With this, however, the lighter, as lighter, had nothing to do. It was her duty simply to transport the wool as bailee, and not to load or discharge it. Negligence in loading, if any, was negligence of Chiarello Bros. as stevedores under their independent contract with the company, for which there would be no lien upon the lighter. When loading and discharging is part of a contract of carriage, there will be a lien on the vessel for negligence in performing it. If the lighter had belonged to a third party, no doubt would exist in anybody's mind upon this point. The master could not have controlled the loading in any way. The conclusion is, however, exactly the same in this case of the stevedores owning the lighter they were loading, when it is sought to establish a lien against the lighter in rem; she and not her owners having been brought in as parties. They have appeared as claimants only to protect their property, and for no other purpose.

Our conclusion is that the failure to provide covers was that of the Steamship Company and not of Chiarello Bros. as owners of the lighter. The lighter is therefore not liable in rem. The question whether they are personally liable as stevedores for failure to take reasonable care in loading depends upon many considerations not presented, as, for example, in respect to continuing to load, whether there was a fair indication of heavy rain; whether there was reason to expect it soon; whether the covers supplied might have been fairly expected to be sufficient for the rain reasonably to be anticipated, and in respect to returning the wool already loaded to the pier, how long it would take to do so; whether there was room for it; whether it or any of it would be wet in that operation and various other considerations which will readily suggest themselves. It is but fair that, if the intention were to hold Chiarello Bros. personally for negligence in loading, it should have been asserted in an action brought against

them in personam on that ground. But Metcalfe has been made a party, has appeared and answered the libel, admitting that the damage to the wool was caused by the lighter's lack of covers, but charging that insufficiency to her and her owners. The trial judge found as a fact that Metcalfe did promise to supply covers from his own lighter Charlotte and that he was at fault in not arranging with his master to lend them to Lighter No. 1. We are of the same opinion.

It follows that the libelants are entitled to recover in full of the Steamship Company and Metcalfe, and that between the Steamship Company and Metcalfe the latter is primarily liable. The decree must be modified by awarding to the libelants their damages with interest and costs against the Steamship Company and Metcalfe, to be collected in the first instance of Metcalfe and any deficiency of the Steamship Company, and by dismissing the petition making the lighter Seven Brothers No. 1 a party, with costs against the Steamship Company.