BROOKS et al. v. HILTON–DODGE LUMBER CO. et al.

(District Court, S. D. New York. November 24, 1914.)

1. SHIPPING &177—DEMURRAGE—LIABILITY FOR DELAY IN DISCHARGING.

Delay in the discharge of a cargo of lumber beyond the lay days provided by the charter *held*, on the evidence, due to the congested condition of the dock on which she was required to unload, which rendered the consignee, bound to furnish the discharging berth, liable for demurrage.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 576–582, 584; Dec. Dig. &177.]

2. SHIPPING &180—DELAY IN DISCHARGING—LIABILITY.

Although a vessel is bound by her charter to employ the stevedores for unloading, where the consignee elects to do so, he cannot hold the vessel responsible for delay on their part in unloading.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 587, 588; Dec. Dig. &180.]

3. SHIPPING &177—DEMURRAGE—LIABILITY FOR DELAY IN DISCHARGING.

Where the consignee of the cargo of a chartered vessel voluntarily assumes the duty of unloading, he cannot deny liability for demurrage in accordance with the terms of the charter party.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 576–582, 584; Dec. Dig. &177.]

In Admiralty. Suit by Joseph W. Brooks and others against the Hilton-Dodge Lumber Company and the Yellow Pine Company. Decree for libelants, against both respondents.

Alexander & Ash, of New York City, for libelants.

Harrington, Bigham & Englar, of New York City, for respondent Hilton-Dodge Lumber Co.

Hyland & Zabriskie, of New York City, for respondent Yellow Pine Co.

HAZEL, District Judge. The schooner Grace Seymour discharged her cargo of pine lumber, which she took aboard at Brunswick, Ga., under a written charter party with the Hilton-Dodge Lumber Company, at Brooklyn, N. Y., in the month of December, 1912. She arrived at the wharf on November 30th, within the time specified in the charter party for furnishing a berth to the vessel by the charterer, but the proofs show that she was not completely unloaded until the 27th of December; the unloading having been delayed for a period of 10½ days beyond the lay days specified in the charter party.

[1] There was credible evidence to show that the respondent the Yellow Pine Company, which was brought into the action under admiralty rule 59 (29 Sup. Ct. xlvi), was at fault for not unloading the vessel more promptly. It appears that the wharf provided by it was at that time frequently congested and incumbered with lumber, and that the congestion was of such extent that the stevedores were hampered and delayed in unloading the vessel. The respondents, however, dispute this, and testimony was given in their behalf to shift the blame for the delay upon the schooner; it being claimed that her master arbitrarily refused to move the schooner astern when the stevedores deemed

it necessary in order to expedite the work, and that he also refused their request to open the bow ports of the vessel.

It is true that at first there was refusal by the master to move the schooner astern, but such refusal was due to the fact that compliance with the request would have projected her stern an appreciable distance out into the river beyond the end of the pier, and would have subjected her to risk and peril from passing craft. The witness Murphy, for respondent, testified that the master of the vessel would not, when urged to do so, open the bow ports, so that lumber could be conveniently pushed through to the stevedores handling it on the wharf; but it is shown by libelant that, at the time such request was made, the schooner was not in a position to comply with it, as the bow ports were submerged by the weight of the cargo. It appears that later, when the schooner was sufficiently unloaded to raise the bow ports above the water level, they were opened and used.

[2] There was other evidence to negative the claims of respondents that the delay in discharging the lumber was caused by the conduct of the master of the steamer; but it is not thought necessary to refer thereto, as a fair preponderance of the evidence distinctly shows that the delay in unloading was chiefly due to the fact that other lumber had been piled on the dock where the schooner was directed to discharge, which interfered with the prompt performance of the work, and also interfered with shifting the vessel. Although in the first instance the schooner was bound to employ stevedores to unload her, still, as the Yellow Pine Company elected to do so, the vessel can scarcely be held liable for any asserted delay on the part of the stevedores, who became the company's agents.

[3] The Yellow Pine Company contends that it is not bound by the charter party, either as to the per diem rate of demurrage or the time for discharge, but on the facts presented I am of a different opinion. In view of the evidence that, on the arrival of the schooner, her master was ready and willing to deliver and unload the cargo in accordance with the charter party, and as the charterer then requested a different arrangement, to which the Yellow Pine Company assented, the latter cannot now be permitted to deny liability under the charter party, or to claim that the detention was not "by their procurement or for their benefit." Irzo v. Perkins et al. (D. C.) 10 Fed. 779.

A decree may be entered in favor of libelant for $514.50 for demurrage, with interest from December, 1912, against both respondents; but, as between the Hilton-Dodge Lumber Company and the Yellow Pine Company, the latter, from which judgment may be collected in the first instance, is held primarily liable, and if the judgment is paid by the Hilton-Dodge Lumber Company it may have recourse against the Yellow Pine Company in accordance with the principle announced in The Seven Brothers No. 1, 203 Fed. 21, 121 C. C. A. 385.

So ordered.