## METCALFE v. CHIARELLO et al.

(Circuit Court of Appeals, Second Circuit. November 5, 1923.)

No. 39.

1. **Shipping** ⊜═▷126—**Stevedores held liable for failing to protect wool from rain.**

Stevedores, contracting with agent of a steamship to unload and transport wool in their lighter, who failed to properly protect it from rain, *held* negligent in proceeding with the work without covers, or without making diligent efforts to secure covers, when rain threatened, even if the agent failed to supply covers as he had agreed, and in failing to place the cargo on a covered pier where it would be protected, and bound to make contribution to the agent who was primarily liable.

2. **Admiralty** ⊜═▷95—**Adjudication that lighter not liable in rem held not to determine liability of owners in personam.**

An adjudication that a lighter was not liable in rem for damage by rain to wool unloaded from a steamship, because agent of steamship failed to supply covers as agreed, did not determine the liability of the owners of the lighter as stevedores for their negligence in not making diligent effort to protect the wool.

Appeal from the District Court of the United States for the Southern District of New York.

Libel·by Sidney A. Metcalfe against Dick Chiarello and others, doing business as Chiarello Bros., and another, to recover damages as exoneration or contribution, the libelant having been held liable in a previous suit because of damage to cargo. From a decree for respondents, libelant appeals. Reversed, with directions.

Alfred H. Strickland, of New York City, for appellant.

William F. Purdy, of New York City, for appellees.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge. A cargo of 950 bags of wool, owned by Willett & Co., was shipped on the steamship Ossabaw from Texas City, Tex., to the port of New York. This ship was owned by the Texas City Steamship Company, and the appellant was its agent in New York. The appellees Chiarello were employed as stevedores by the steamship company, through the appellant, to remove the wool from the ship and transport it by their lighter from Pier 14 to Pier 19, North River, in the harbor of New York. Appellant was a lighterman, in the employ of the steamship company, and attended to the securing of lighters for unloading. His instructions were to use steam lighters which belonged to the interests of the steamship company, and if they were not available he used his own lighters; if his own lighters were not available, he could employ others. His compensation was a percentage of the business done by the lighters of the steamship company and what he could earn when he employed his own lighters.

The steamship reached New York on August 31, 1910, at about 7 a. m., and the appellees Chiarello with a gang of 80 men and the lighter Seven Brothers No. 1 began taking the wool from the ship to the pier, which was covered. It was thereupon piled by the appellees,

about six tiers high, on the deck of the lighter, the last bag being unloaded about 1 o'clock a. m. on the morning of September 1st. The weather on August 31st was clear, but about 10 o'clock p. m. it began to look like and threatened rain, and rain actually began to fall at 1 o'clock the following morning, and continued for 12 hours thereafter. At 10 o'clock, Charlie Chiarello, one of the appellees who was in active charge of unloading the wool, says the weather changed and it looked like rain. He went to the lighter Charlotte, which was owned by the appellant and was alongside the pier, and asked for covers; but this was refused by the captain, who, he says, stated that he did not have a written order to loan them. He then said: "I didn't want to have trouble with the man, and I went back again." He continued to unload the lighter at the rate of about 150 bales an hour from 10 o'clock on, placing 450 bales thereon. There were two other lighters near by, which had covers, but he did not try to borrow from them; but, with threatening rain, this experienced stevedore continued to load this perishable and valuable cargo on the lighter. Indeed, he took refuge in the fact that he did obtain covers from a steamer later, but these were insufficient, and were dirty with coal dust, and, when the rain came, spoiled the wool.

[1] Rain came after 10 o'clock, and justified his belief that it would from the appearance of the sky. He says it began to rain at 1 o'clock, and that is the time he tried to obtain the covers, and it was not until then that he used the coal covers. There is no doubt it was then raining. His testimony is very unsatisfactory. He added to and contradicted his former depositions, made 10 years ago, as to occurrences. When his former statements were made, these happenings were fresh in his mind. He declared in his last version that the captain of the Charlotte ordered him off the boat, and "threatened to kill him when he came the second time." The fact remains that he did not telephone to the appellant's office. It was the duty of the stevedores to be energetic in securing proper covering or to unload before the rain. The risk of continuing loading in the face of threatened rain was apparent to an experienced stevedore. It was a less risk and a small expense to unload and place the wool under cover. When he was refused the use of the covers of the Charlotte, he could have gone to the Bee Line boats near by. He might have telephoned to the office of the stevedores and endeavored to get tarpaulins from other vessels, or he might have advised the appellant and thus secured authority from the captain to loan the covers, or perhaps appellant would have supplied others. Instead, at 8 o'clock in the morning, he left the lighter and went home, although it was raining. The covers which were placed on the wool did not cover the sides, and the rain beat in upon the sides and dropped from the roof of the pier. No one remained during the night to assist in protecting the wool. Of all the excuses offered, none excused the faults of the stevedores. The covers which were used were inadquate and were smeared with coal dust, having been previously used on coal hatches. The wool might have been taken off the pier at a small expense. There was ample room, according to credible testimony, to place it under cover on the pier. We believe

there is ample testimony to justify this claim of the appellant, although it was contradicted by the appellees.

In a suit instituted by Willett & Co. against the appellant and appellees (The Seven Brothers No. 1, 203 Fed. 21, 121 C. C. A. 385), this court held the appellant liable for full damages to the cargo, finding that he had agreed on behalf of himself and the steamship company to furnish covers, which he failed to do, and which resulted in damage to the cargo in question. It exonerated the lighter, sued in rem, saying:

"The District Judge next proceeded to hold that the damage was really caused by the negligence of Chiarello Bros. in continuing to load after the weather became threatening, and in not returning the bales already loaded to the covered pier. With this, however, the lighter, as lighter, had nothing to do. It was her duty simply to transport the wool as bailee, and not to load or discharge it. Negligence in loading, if any, was negligence of Chiarello Bros. as stevedores under their independent contract with the company, for which there would be no lien upon the lighter. When loading and discharging is part of a contract of carriage, there will be a lien on the vessel for negligence in performing it. If the lighter had belonged to a third party, no doubt would exist in anybody's mind upon this point. The master could not have controlled the loading in any way. The conclusion is, however, exactly the same in this case of the stevedores owning the lighter they were loading, when it is sought to establish a lien against the lighter in rem; she and not her owners having been brought in as parties. They have appeared as claimants only to protect their property, and for no other purpose. Our conclusion is that the failure to provide covers was that, of the steamship company, and not of Chiarello Bros., as owners of the lighter. The lighter is therefore not liable in rem."

[2] The liability of Chiarello Bros. in personam, as they are sued here, for their part as stevedores, was not determined in the former litigation. We pointed out the theory upon which liability could rest on the Seven Brothers No. 1, where Chiarello Bros. were claimants. Likewise it was pointed out that stevedores might be held for damages for negligence. The theory of liability in the present suit is that Chiarello Bros., as stevedores, contributed to the injury for which appellant has been held responsible. We think that Chiarello Bros. were partly in fault for going ahead with the work without covers, or at least making a diligent effort to get covers, even though the appellant did not supply them. We also think they were at fault for failing to unload the lighter and place the cargo where there was room on the covered pier, and thus protect it from the elements. The authorities compel us to impose liability for contribution under these circumstances. In The Robert R., 255 Fed. 37, 166 C. C. A. 365, this court held stevedores liable for loss of cargo due to capsizing of a lighter, which was due to the failure to properly trim the cargo as loaded, and this because it was the duty of the stevedores to stop work when it became unsafe to load the lighter without trimming. The court said:

"If conditions showed that continuance in discharging was unsafe, the stevedores, like any one else, were bound to cease discharging."

In The Adah, 258 Fed. 377, stevedores were employed to load copper concentrates upon a lighter from a steamer. They were not employed to trim the cargo of the lighter. This court held that a stevedore, contracting to discharge a ship into lighters or scows, although

his contract does not include trimming cargo, is bound to stop work, if and when it becomes unsafe to continue loading without trimming, and is liable to third parties injured, if he proceeds. See, also, Warren v. Stoddart, 105 U. S. 224, 26 L. Ed. 1117, and Dalbeattie S. S. Co. v. Card (D. C.) 59 Fed. 159.

Holding, as we do, that the stevedores were negligent in loading on the lighter under the circumstances revealed by this record, we think that they should contribute to the loss sustained. This court has held that the failure to furnish covers made the appellant, as agent, primarily liable and the steamship company secondarily liable. The stevedores negligently contributed to this damage and they must share one-half of the loss.

The decree is reversed, and the District Court is directed to enter a decree for one-half the sum paid by the appellant to Willett & Co., with interest. Decree reversed.

HOUGH, Circuit Judge, heard the argument and concurred in the conclusion reached, but has not seen the opinion as prepared, because of necessary absence.