THE RANDWYK.

(Circuit Court of Appeals, Fourth Circuit. September 14, 1915.)

No. 1357.

SHIPPING ☞132—LIABILITY OF VESSEL FOR LOSS OF CARGO—NEGLIGENT DELIVERY.

A finding that the capsizing of a scow and the dumping of her load while she was taking cargo, consisting of kainit and potash, from a steamship through chutes, with two men furnished by the ship to trim the load, was due to negligent loading and trimming, for which the ship was responsible, *held* supported by the evidence.

[Ed. Note.—For other cases, see Shipping, Cent. Dig. §§ 471–487; Dec. Dig. ☞132.

Liabilities of vessel owners for loss or injury from improper stowage, see note to The Gualala, 102 C. C. A. 553.]

Appeal from the District Court of the United States for the District of Maryland, at Baltimore; John C. Rose, Judge.

Suit in admiralty by the Piedmont-Mt. Airy Guano Company against the steamship Randwyk; the Randwyk Steamship Company, owner, and the Holland-American Line, charterer, claimants. Decree for libelant, and claimants appeal. Affirmed.

For opinion below, see 220 Fed. 383.

John B. Deming, of Baltimore, Md. (Whitelock, Deming & Kemp, of Baltimore, Md., on the brief), for appellants.

Arthur D. Foster, of Baltimore, Md., for appellee.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. The steamship Randwyk, of the Holland-American Line, arrived in Baltimore Harbor on Friday, December 11, 1914, with 557 bags of potash and 214,172 kilograms of kainit, in bulk, delivered by the libelant, Piedmont-Mt. Airy Guano Company, to the ship at Rotterdam, consigned to itself at Baltimore. The bill of lading provided that the merchandise was "to be delivered from the ship's deck (where the shipowner's responsibility shall cease)." The Guano

Company, on the day of arrival, sent a scow alongside to receive the goods and transfer them from the ship to the scow. The work was commenced on Saturday morning, but was suspended until about 9:30 Saturday night. It was continued from that time until about 3 o'clock Sunday morning, when the scow turned bottom up, and 97 bags of potash and 150 tons of kainit were lost. The District Court held that the overturning of the scow was caused by negligent unloading on the part of the ship, and entered a decree in favor of the Guano Company for $5,249.18, the value of the property lost. The appeal involves only the question of fact whether the loss was due to the negligent unloading by the ship, or to a leak in the scow, or some other cause.

The unloading was done by means of a chute; the ship having two men in the scow to trim or arrange the merchandise properly on each side of the center of the scow, so that it would be steady. The scowman testified that the trimming was improperly done, that the scow was overloaded at one end, and that those acting for the ship failed to move the scow when he told them they were not distributing the load properly, failed to furnish more men to trim when he requested them to do so, because the two trimmers could not handle the goods fast enough, and failed to heed his warning that, because the chutes were too short, the load was falling too much on the side next to the ship. To discredit this statement, Brown, the local night superintendent of the Holland Line, testified that, when the scowman asked to have the scow moved, it was moved, and that his orders were complied with in every particular; that he could see the cargo, and that it was level; that the chute was long enough; that the scowman did not ask for more trimmers; that the scowman told him after the accident that the trimming was properly done; that there was water in the scow; and that it must have sprung a leak. Sinclair, a night inspector of customs service, testified he heard the scowman tell Brown that the loading was properly done, but that he did not know whether the scow was leaking, and that he did not know what made it turn over. The stevedore foreman testified in general confirmation of Sinclair, adding that the scow was moved whenever the request was made by the scowman, and that the scowman said that the scow had turned over twice before. Two deckmen of the ship testified that the scow was moved once at the request of the scowman, and that they heard no orders of the scowman that were not obeyed.

According to the scowman's version of his statement after the accident, he said the scow was on an uneven keel, that it was a hard matter for him to say what caused the accident, and that he said nothing about a leak. The proof was conclusive that the scow had never turned over before, and examination after the accident showed there was no leak.

The fact that no defect was found in the scow, taken with the other fact that the scow listed violently towards the ship tends to corroborate the testimony of the scowman that the loading was negligently done, and that the unequal distribution of the load was the cause of the accident. This support in the evidence for the conclusion of the District Court on an issue of fact must result in affirmance.

The District Judge did not base his conclusion on the doctrine of res ipsa loquitur, but on the testimony of the scowman corroborated by the surrounding circumstances.

Affirmed.