## THE ROBERT R.

### THE PRINZ FREDERICK HENDRIK.

(Circuit Court of Appeals, Second Circuit. December 12, 1918.)

No. 100.

1. SHIPPING ⬤⇒126—LIABILITY OF VESSEL—NEGLIGENCE IN DISCHARGING.

   A steamship contracting to deliver cargo at a wharf is liable under its contract to the cargo owner for loss due to negligence in discharging from the ship into a lighter.

2. SHIPPING ⬤⇒126—CONTRACT WITH STEVEDORES FOR DISCHARGING—LIABILITY FOR NEGLIGENCE.

   Stevedores contracting with a steamship to discharge ore into a lighter, although not including trimming the cargo, *held* primarily liable for loss by dumping because of failure to trim, where they continued loading after danger of capsizing was apparent, over protest of the master of the lighter, and without notifying the ship.

3. SHIPPING ⬤⇒126—CONTRACT WITH STEVEDORES FOR DISCHARGING—NEGLIGENCE IN PERFORMANCE.

   A contract by a steamship with stevedores to discharge cargo into a lighter contemplated exercise by the stevedores of ordinary care, and, if conditions showed that continuance of discharging was unsafe they were bound to stop until the danger was removed.

4. MASTER AND SERVANT ⬤⇒319—INDEPENDENT CONTRACTOR—REQUIREMENT OF CARE.

   Only the clearest requirement of a contract to do something which is dangerous can relieve the contractors from the exercise of ordinary prudence and impose liability on the owner.

Appeal from the District Court of the United States for the Southern District of New York.

Suit in admiralty by H. D. Boret against the lighter Robert R., Jacob Rice, claimant; the steamship Prinz Frederick Hendrik, Royal Dutch West India Mail Company, claimant; Angelo Pellegrino and Carmelo Pellegrino, and Johnson Lighterage Company, incorporated, impleaded. Decree for libelant against the steamship alone, and her claimant appeals. Modified.

⬤⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

This is an appeal from a decree whereby the libelant recovered from the steamship Prinz Frederik Hendrik and her claimant, Royal Dutch West India Mail Company, the sum of $10,372.27, and the libel and petitions against the lighter Robert R., Angelo Pellegrino and Carmelo Pellegrino, stevedores, and the Johnson Lighterage Company, charterers of the lighter Robert R., were dismissed.

The steamship, on September 29, 1914, was docked at Pier 3, Bush Terminal, Brooklyn. Part of the cargo consisted of copper ore which belonged to the libelant and was to be delivered at Chrome, N. J. Messrs. Funch, Edye & Co., the agents of the steamship, arranged with the Johnson Lighterage Company, who were charterers of the lighter Robert R., to transport the ore from the steamship to its destination at the rate of 22 cents a ton. They had been informed that, if trimming of the ore when loaded on the lighter was necessary, the rate would be 25 cents a ton. The District Court, therefore, found that no trimming was contracted for (Record, fol. 478) and that there was an extension of the contract of carriage to Chrome. Funch, Edye & Co., through its subsidiary company, employed the stevedores to unload the ore and place it on the lighter, but did not so far as appears contract with them to do any trimming (Record, fol. 268). The lighter was loaded by the stevedores, so that there was but little more weight of ore on one side than the other; but the ore was not spread, and the center of gravity apparently became so high, because of the deep pile of ore along the center of the deck, that finally a single bucket of ore, weighing about half a ton, tilted the lighter, the stern corner hit the steamship, and caused the load to shift and the lighter to dump a part of the ore. The District Court found, on abundant evidence, that the loss of a part of the cargo was caused by the failure to trim. The libel was filed against the lighter. The owner, by petition, brought in the steamship and the stevedores, Angelo Pellegrino and Carmelo Pellegrino, under the Fifty-Ninth Admiralty Rule (29 Sup. Ct. xlvi), and the Royal Dutch West India Mail Company, the owners of the steamship, and the Pellegrinos filed a cross-petition against the lighter Robert R. and the Johnson Lighterage Company, her charterers. The court granted a decree for damages against the steamship and her owners, on the ground that the vessel improperly discharged her cargo. It dismissed the libel against the lighter on the ground that she was not bound to trim, and the intervening petition against the Pellegrinos for the same reason. Decree modified.

Kirlin, Woolsey & Hickox, of New York City (J. Parker Kirlin and Robert S. Erskine, both of New York City, of counsel), for appellant.

Barry, Wainwright, Thacher & Symmers, of New York City (James K. Symmers, of New York City, of counsel), for libelant.

Hyland & Zabriskie, of New York City (Nelson Zabriskie, of New York City, of counsel), for appellee Jacob Rice.

Herbert Green, of New York City, for appellee Johnson Lighterage Company.

Haight, Sandford & Smith, of New York City (Henry M. Hewitt, of New York City, of counsel), for appellees Angelo Pellegrino and Carmelo Pellegrino.

Before ROGERS and MANTON, Circuit Judges, and AUGUSTUS N. HAND, District Judge.

AUGUSTUS N. HAND, District Judge (after stating the facts as above). [1, 2] There can be no doubt that the steamship under the contract of carriage is liable in any event for the damage suffered. In spite of the fact that the Pellegrinos were independent contractors, it is contended that the steamship is liable in tort on the ground that

a contract to discharge a vessel of a cargo like copper ore, without adequate provision for trimming, was dangerous in itself because large lumps of ore would not spread by mere dumping. This theory will hardly bear analysis. Other vessels were safely loaded with ore at Pier 3 without trimming, and trimming was apparently required, if at all, under circumstances which could only develop as the work proceeded. It therefore is unreasonable to regard the contract as in itself negligent and improper. It was one in which circumstances might arise during the performance where the stevedores should call on the steamship to trim, and their failure to do this, and persistence in dangerous loading, rather than the making of a contract which did not call for trimming, were the negligent acts that caused the damage. Indeed, the fact that the stevedores did not contract to trim seems to us in no way to relieve the latter from liability. They undertook to discharge the cargo, and were bound to do this in a prudent manner. If it became unsafe to load the barge without trimming, as proved to be the fact, it was the plain duty of the stevedores to stop work and call upon the steamship to trim. Instead of doing this, they continued to pile the ore on the deck of the lighter, without seeing that it was spread by some one, until the center of gravity of the lighter became so high that she dumped her load.

[3] It is argued that because the vessel did not do the trimming when it was bound to do so, and had not provided other means, the damages should either be placed on her alone, or be divided. We cannot say, however, that under the circumstances shown the ship in a legal sense was liable in tort. If the stevedores had ceased loading and called for trimming and secured assistance, the accident would not have happened. Their continuance in loading when danger was imminent was the proximate cause of the damage, and they only are liable in tort. It was the dumping of the last buckets of ore on the lighter that caused the injury. The M. E. Luckenbach, 214 Fed. 571, 131 C. C. A. 177; The Satilla, 235 Fed. 58, 148 C. C. A. 552.

Cases are cited where owners of merchandise consented to place it on deck and were not allowed to recover for any damage suffered by a jettison of the cargo which became necessary by reason of this method of stowage. Lawrence v. Minturn, 17 How. 100, 15 L. Ed. 58.

[4] Cases are also cited where a specific contract has been made to do something which from its very nature resulted in loss. MacKnight F. Stone Co. v. City of New York, 160 N. Y. 72, 54 N. E. 661; Penn Bridge Co. v. City of New Orleans, 222 Fed. 737, 138 C. C. A. 191. The contracts involved in these cases are entirely different from the one under consideration. Here the shipowner never contracted that the stevedores should discharge the steamer in a dangerous manner and cause the lighter to dump the cargo by piling on more ore until she lost her equilibrium. He did not contract that the steamer should be discharged, at all events, without trimming of the cargo, but only that the stevedores should discharge her subject to the ordinary standard of care. If conditions showed that continuance in discharging was unsafe, the stevedores, like any one else, were bound to cease discharging. Only an express contract, or consent, to do dangerous acts. can shift the lia-

bility for these acts, and no such situation appears here. The whole question turns on what the contract called for. Only the clearest requirement to do something which is dangerous can relieve the contractors from the exercise of ordinary prudence. The contract in question is very different from a specific consent to stow all the cargo in a place where it is likely to have to be jettisoned in a storm, or a contract to build a bridge according to specifications furnished by the owner which would result in a weak structure.

It is contended that the master of the lighter should have warned the stevedores of the danger. We think the District Court was correct in holding that the contract with the lighterage company was only for carriage and that a price was made which expressly did not include trimming by the lighter. The master of the lighter, as found by the court below, protested repeatedly at what was being done. This protest was made both to the foreman of the stevedores, and on the second day to one of the Pellegrinos. The statement of the trial judge that in all probability the protests did not get any further than an Italian, who did not understand English, seems to have been inadvertent, for both of these men testified in English at the trial and would certainly have understood words used every day in their business. We think the master of the lighter did all that could be reasonably expected of him under the circumstances.

The decree should be modified so as to hold the stevedores primarily liable.