**THE EVELYN. COONEY ECKSTEIN & CO. v. F. & J. AUDITORE & CO. et al. FLANNERY v. SAME.**

(Circuit Court of Appeals, Second Circuit. April 24, 1922.)

Nos. 252, 253.

1. **Shipping** ⚖⇒143—Stevedore primarily liable for loss of cargo by overloading lighter.

A stevedore employed to discharge railroad ties from a steamer and stow them on a lighter is primarily liable for loss of ties by capsizing of the lighter from overloading, having continued to load after the lighter began to list and it was apparent that there was an overload.

2. **Shipping** ⚖⇒143—Owner of lighter secondarily liable for loss of cargo because of captain not objecting to overloading.

The owner of a lighter chartered by owner of ties for transporting them from ship was secondarily liable for their loss by capsizing of the lighter from overloading by stevedore; the lighter captain not objecting to further loading when it was plain that the lighter was overloaded and listing.

3. **Shipping** ⚖⇒53—Charterer of lighter not responsible for overturning from overloading by stevedore without objection by captain.

The charterer of a lighter for transportation of his ties from a ship was not responsible for overturning of the lighter from overloading by the stevedore without objection by the lighter captain, whether the charter was a demise or an affreightment charter, with an undertaking on the part of a previous charterer to transport the cargo.

Appeals from the District Court of the United States for the Eastern District of New York.

⚖⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Two suits in admiralty, one by Cooney Eckstein & Co., owner of a cargo of railroad ties, against F. & J. Auditore & Co., stevedore, for loss of and damage to parts of the cargo by the capsizing of the lighter Evelyn; the other by Daniel Flannery, owner of the lighter, against said stevedore company for damage to the lighter from said capsizing. By petition the stevedore company impleaded Flannery in the first suit, and Cooney Eckstein & Co. in the second suit. In the first suit there was decree for Cooney Eckstein & Co. against both the other parties, from which they appeal; and in the second suit there was decree for Flannery against the stevedore company for half the damage to the lighter, from which they both appeal. Modified and affirmed.

For opinion below, see 215 Fed. 801.

Cass & Apfel, of New York City (Sylvan Lehmayer, Jr., of New York City, of counsel), for appellant F. & J. Auditore & Co.

Harrington, Bigham & Englar, of New York City (Vine H. Smith, of New York City, of counsel), for appellee.

Macklin, Brown, Purdy & Van Wyck, of New York City (Pierre M. Brown, of New York City, of counsel), for respondent Flannery.

Before ROGERS, MANTON, and MAYER, Circuit Judges.

MANTON, Circuit Judge. The appellee, Cooney Eckstein & Co., was the owner of a cargo of railroad ties, which was to be discharged from the steamship Yaguez at Pier 22, Brooklyn, on January 25, 1912. A steam lighter Evelyn, belonging to Daniel B. Flannery, was one of the vessels engaged in this work. F. & J. Auditore & Co. was employed as the contracting stevedore. Discharge started on January 26, 1912, and continued throughout the day until the following morning; then the lighter Evelyn careened, throwing off a large number of ties and damaging the lighter. The owners of the cargo filed a libel against the stevedoring company, and the latter interpleaded the owner of the Evelyn, upon the claim that the loading was under the direction of the captain of the lighter, and because, as it was claimed, the lighter was not properly ballasted.

[1] There is a conflict of evidence as to the manner of stowage, but it was apparent that the Evelyn was overloaded at the time of the capsizing and that such overloading caused the damage. The evidence is positive that there was no leak at any time. But there is a claim set forth that the stevedore was furnished an unseaworthy lighter, which was unsuited for the lumber to be loaded. We fail to find this contention supported by proof. There is testimony by a witness called by the stevedore, in which the witness said he complained to the captain that the boat leaked, and the captain replied, "You keep on putting them on; I will tell you when to stop," and after which the stevedore continued loading the vessel. This is denied by the lighter captain. The contract of the stevedore was to discharge the ties from the steamer and stow them on the lighter. Its requirement was that this be done in an ordinary prudent manner. For about 10 minutes before the lighter upset, there was a list which was easily seen and was known both to the lighterman and stevedore. Thereafter the loading continued with the idea, as claimed, to have the lighter "obtain her equilibrium." But it was

apparent that the lighter was greatly overloaded and the stevedore knew it, if the testimony be true, that they complained to the captain about it. They continued to put on more ties resulting in greater listing of the lighter until she actually went over.

Ordinary diligence and care should have indicated the prospective upsetting of the lighter and the damage or loss resulting by reason of this continued loading. The lighter had more than her normal capacity of cargo. After listing and while more ties were being loaded, there was no change made in the method of loading. The stevedores were experienced men and should have effected the discharge of the ties from the steamer and have loaded them upon the lighter safely. The Robert R., 255 Fed. 37, 166 C. C. A. 365; The Adah (D. C.) 245 Fed. 378. The foreman of the stevedores testified that when the lighter listed, he knew there was an overload on the lighter; that he noticed the "load was too high" and this he determined about 10 minutes before the capsizing.

In The Robert R., supra, the stevedores were held liable upon facts somewhat similar to those presented here. There the stevedores contracted with the steamship company to discharge ore into a lighter which did not include the trimming of the cargo and they were held primarily liable for loss by dumping because of the failure to trim. There we said:

"If it became unsafe to load the barge without trimming, as proved to be the fact, it was the plain duty of the stevedores to stop work and call upon the steamship to trim. Instead of doing this, they continued to pile the ore on the deck of the lighter, without seeing that it was spread by some one, until the center of gravity of the lighter became so high that she dumped her load."

We think it too clear for argument that the stevedore was responsible when, after this knowledge, they continued to drop several more slings of ties, weighing a ton apiece, on the lighter which they knew to be already overloaded. The bargeman had no power to go on loading ties, as they say he did, and, even if he did so, it did not authorize them to subject the appellee's property to the hazard of overloading. They are accountable to the appellee for the loss sustained through this negligence.

[2] While he is not held to the measure of skill required of the stevedore, whose business it is to safely stow the cargo for transportation upon the lighter, nevertheless, the bargeman is required to exercise ordinary care for the safety of the cargo to load it upon the lighter to the extent of keeping the lighter seaworthy. It was plain that the Evelyn was overloaded and was unseaworthy by reason of her excess load of bulky cargo. This condition should have been apparent to the master of the lighter. He admitted, in his testimony, that he was aware that the lighter was not carrying the load properly which she already had aboard. We think he was competent to determine that she had an excess of load and he was negligent in failing to protest or endeavor to stop the loading. There is the testimony referred to that he suggested the lighter would carry more and directed further loading.

[3] The appellee engaged the services of the lighter for the transportation of its cargo, and it does not appear whether the charter of the lighter was a demise or merely an affreightment charter, whereby

the appellee obtained the use of the lighter together with an undertaking on the part of a previous charterer to transport the cargo. In either case the appellee assumed no responsibility respecting the stowage. The stevedore undertook that work. Under these circumstances, the owner of the lighter was responsible for its seaworthiness, and any fault on the part of the lighter, whereby the lighter became unseaworthy was not attributable to the appellee, but to the owner of the lighter. Daile v. Carroll, 248 Fed. 466, 160 C. C. A. 476; The Junior, 279 Fed. 407, decided February 6, 1922 (Hough, Circuit Judge).

The decree sustaining the libels of Cooney Eckstein & Co., libelant appellee, and Daniel B. Flannery, libelant appellant, against the appellant F. & J. Auditore & Co., will be modified, so as to hold the stevedore primarily liable for the damages awarded to Cooney Eckstein & Co., and the lighter owner secondarily liable, and, as so modified, the decree is affirmed.