## HASTORF CONTRACTING CO. v. OCEAN TRANSPORTATION CORPORATION et al.

(District Court, S. D. New York. January 25, 1923.)

**1. Shipping ⬩⬩⬩ 126—Stevedores undertaking to stow cargo held primarily liable for crushing barge's deck by concentrating cargo in two spots, regardless of contract.**

Stevedores undertaking to stow cargo were primarily liable for crushing barge's deck by negligently concentrating cargo in two spots. though they were not bound under contract to lade barge.

**2. Shipping ⬩⬩⬩ 126—Bargee held not responsible for failing to protest against stevedores' method of stowing cargo.**

Though bargee is owner's agent to say when barge is fully loaded, he is not responsible for failing to protest against stevedores' method of stowing rails or telling stevedores how to do so.

**3. Shipping ⬩⬩⬩ 126—Rule as to responsibility of bargee stated.**

Bargee is responsible for warping barge to safe berth, avoiding known dangers, pumping, covering hatches, stopping load at barge's capacity, and other matters which he must do alone, but is not responsible for matters which stevedores may be assumed to know.

Affirmed in 4 F.(2d) 584.

James A. Martin, of New York City, for libelant.

John W. Crandall, of New York City, for Ocean Transportation Corporation.

Horace L. Cheyney, of New York City, for Director General of Railroads and Spencer.

LEARNED HAND, District Judge. It appears to me very unlikely that there should have been a separate gang of stevedores upon the Algora to stow the rails upon the deck. While the Director General was under no obligation to do more than deliver the rails over the lighter's side, it is not improbable that he should have completed the discharge by disposing of the rails himself. This is to some extent corroborated by the fact that the foreman stevedore concedes that when the discharge is to the bulkhead, the stevedores lay up the cargo in proper order. Moreover, it is clear that the foreman stevedore had no definite recollection of this particular event. As between the respondent and the Director General, I must choose the second.

[1] Having undertaken to stow the barge, the stevedores are primarily responsible, regardless of contract, The Randwyck (D. C.) 220 F. 383, affirmed 226 F. 724, 141 C. C. A. 480 (C. C. A. 3). The trimming cases are on all fours. The Robert R., 255 F. 37, 166 C. C. A. 365 (C. C. A. 2); The Adah, 258 F. 377, 169 C. C. A. 393. The liability is in tort. What happened was that the stevedores crushed in the barge's deck by laying rails upon it. It makes no difference that they were not bound to lade the barge, or even that they did it as a favor to the respondent. That is no excuse for the direct injury which they did. Nothing compelled them to put the rails where they were; if in doubt, they could have insisted that the respondent or the owner should advise them where the rails should lie and what was the proper place to place the scantlings. If they chose to concentrate upon two spots the whole weight of the cargo, they as immediately stove in the deck as though they had used the end of a rail.

[2] Nor can I agree that the bargee is responsible for failing to protest or to tell them how they should properly stow the rails. Dailey v. Carroll, 248 F. 466, 160 C. C. A. 476 (C. C. A. 2), is authoritative and declines to make a definition of how far the owner is chargeable with the bargee's ignorance. That he is the owner's agent to say when the barge is fully loaded is true. The Evelyn, 282 F. 250 (C. C. A. 2); National, etc., Co. v. Turney, etc., Co., 281 F. 315 (C. C. A. 3). But that is quite another thing from charging him with the duty of knowing that the bearing points of the cargo should be over the struts which support the deck. Each barge has her own capacity; the owner must instruct the bargee of her limits, and he takes the risk of his failure to protest against an overload. That is a reasonable responsibility, because the stevedores cannot learn it of themselves, except at great pains. Similarly, if the barge have peculiar weaknesses which competent stevedores would not suspect.

The case at bar was nothing of this sort. The barge was of common build, and the way to load her was obvious enough to any one who undertook to do it. It was clear neglect to center all the weight on an unsupported deck. Therefore the stevedores should have had nothing to learn from the bargee if they knew their business. On the other hand, the bargee ought not, I think, be asked to know such things. It is true that The William Power (D. C.) 131 F. 136,

seems to be contra; but I cannot think it was rightly so held.

[3] No doubt the line will always remain hazy; it is impossible to say just what the bargee must know. Such simple things as handling the lines, warping the barge to a safe berth, avoiding known dangers (Morey v. New Rochelle, 254 F. 425, 166 C. C. A. 57 [C. C. A. 2]), pumping, covering the hatches, stopping the load at the barge's capacity, and other matters fairly within the competence of the ignorant men who man such craft—all these and no doubt more may be charged to them. But this involved some knowledge of the strains which this or that part of the deck should carry. I do not, of course, mean that the owner might not have told the bargee how such cargo ought to be stowed; but I do think that it was unreasonable to expect of him such instruction when he might fairly rely upon that knowledge on the part of those who might undertake to lade the barge.

What the bargee must do alone, what the stevedores will not know as part of their calling, in what respects the barge is peculiar in her class, with such things the bargee is charged. But I can see no reason in requiring the owner to have at hand a bargee who would be able to tell others how to do what he may assume they know already, and indeed after some experience I should be disposed to question whether a bargee's advice in such matters would meet that reception which alone would make it valuable to the owner or comfortable to the giver.

The decree will pass against the respondent and the Director General and Spencer; execution to go first against the Director General and Spencer, who for the purposes of the case, as I understand it, are to be taken as one party.