## THE HARRY F. HOOPER.

### EASTERN TRANSP. CO. v. VIRGINIA SMELTING CO.

Nos. 9355, 10627.

District Court, E. D. New York.

April 11, 1930.

Carter, Ledyard & Milburn, of New York City (Rush Taggart, of New York City, of counsel), for libelant.

Foley & Martin, of New York City (J. A. Martin, of New York City, of counsel), for respondent.

CAMPBELL, District Judge.

The libel and cross-libel were tried together, and but one opinion is required.

The Harry F. Hooper is a seagoing barge, owned and operated by Eastern Transportation Company. She is 310 feet long, 35 feet beam, with 14-foot sides, and a capacity of 1,400 tons.

The vessel had a ceiling over the bottom under the deck, and this ceiling was a good, well-laid ceiling, much better than the average.

She had a 4-inch suction and a 6-inch discharge steam pump located forward, with a suction pipe leading aft and two hand pumps aft.

The Hooper had carried a cargo of coal from Norfolk, Va., to Augusta, Me., and after discharge at Augusta proceeded to Portland, Me., to take on the cargo in question, and was tight, staunch, and strong when the cargo in question was loaded thereon.

One surveyor contended that the hand pumps were not in good condition when he saw the barge at Nichols Dock, before she was discharged of the cargo in question, but it seems to me that the testimony of the captain, that he tried his pumps each day and that no repairs were made to the pumps when the vessel went to dry dock, is more impressive, and I find that the pumps were in good order at the time of loading.

The Virginia Smelting Company, in the charter party of June 7, 1926, agreed upon the freighting and chartering of the whole of the barge Harry Hooper from the Eastern Transportation Company (with the exception of the cabin and necessary room for the crew, and the stowage of provisions, sails and cables) or sufficient room for the cargo thereinafter mentioned, from Portland, Me., to New York, and engaged to provide and furnish to the said vessel "a cargo of copper concentrates, cargo to be shipped on the vessel's skin at the shipper's risk."

The charterer agreed to pay for the use of the vessel during the voyage "six hundred dollars ($600) lump sum, and one dollar ($1.00) per gross ton of 2,240 pounds, for each and every ton over 600 tons," and further provided that "Captain of the barge to report to the Agent of the Grand Trunk Railroad for cargo."

The barge Hooper reported to the agent of the Grand Trunk Railroad, at Portland, Me., who came aboard, examined the barge Hooper, and said the barge was O. K.

The captain of the barge took no part in loading the barge, and she was loaded by others on behalf of the Virginia Smelting Company, using an endless belt, which carried the cargo from the railroad car to the boat, and, as they desired to load other hatches, the endless belt was shifted. In all 704 tons of the cargo in question were loaded on the barge Hooper.

An Eastern Transportation Company tug, the A. L. Walker, took the Hooper in tow and proceeded to New York.

No dunnage of the character of tar paper, tarpaulins, or something of that kind, was placed underneath or at the sides of the cargo to protect the pumps.

The tug Walker, with the barge Hooper in tow, proceeded all right until about two hours after passing Shinnecock Light, when the pumps of the barge Hooper would not work, as they were stopped by the concentrates which had found its way into the pumps.

On arrival at the port of New York, the barge Hooper dropped anchor at Red Hook Flats.

The port side of the barge was the weather side on her way down, and the barge had a list of 15° to starboard. On sounding forward on the starboard side, not over 12 inches of water were found, and there was very little water on the port side. The tug Walker then siphoned out the barge Hooper.

From Shinnecock Light to New York, the weather was heavy and unusual for June.

The barge Hooper then was taken to Nichols Copper Dock, at Newtown Creek. She was not discharged there, but was discharged at a dock further down the creek.

All of the cargo could not be discharged, as a quantity of it had found its way between the ceiling and the skin of the ship and into the pumps.

The barge was then towed to Shewan's Dry Dock, where a plank near the bilge streak was removed from end to end, and the copper concentrates on the skin of the ship was washed out with water pressure on the dry dock, and what could be salvaged was taken away on a barge.

No other work than removing, replacing, and caulking the plank was performed.

The Hooper was tight and did not make more water than is usual with wooden boats in good condition.

The damage was caused by the copper concentrates finding their way through cracks in the ceiling into the bilges.

■ The expert, Capt. Gardner, says that the cargo was not properly dunnaged with canvas, old sails, or tar paper. I agree with

him, but I cannot find the barge at fault, because the barge was not loaded by the owner, her master, or any one acting for them, but by some one on behalf of the charterer, whether it was the railroad or some stevedore employed by it.

■ The barge was not a common carrier, but the relation between the parties was that of bailor and bailee, and the question is, Whose agents wrought the injury? The Thomas P. Beal (C. C. A.) 11 F.(2d) 49, 53.

■ The provision of the charter party, "cargo to be shipped on the vessel's skin at the shipper's risk," imposed on the charterer, whose agent loaded the barge, the duty to properly dunnage the cargo, and no recovery can be had against the barge for any damage caused by that failure, and there was nothing improper in the charterer assuming the risk of such stowage. The Elizabeth Edwards (C. C. A.) 27 F.(2d) 747.

■ The fault in the instant suit was that of those who loaded the cargo on the barge and not that of the barge or her captain, because, while he had the duty to stop the loading when the barge's capacity was reached, he was not charged with the duty of telling those who loaded the barge how it should be accomplished, nor of protesting if it was not done in his way. Hastorf Contracting Co. v. Ocean Transportation Corporation (D. C.) 4 F.(2d) 583, affirmed (C. C. A.) 4 F.(2d) 584.

The charterer is not entitled to recover.

■ The owner contends that it is entitled to recover from the charterer the damages caused by the sifting through the ceiling of the concentrates that found lodgment in the skin of the ship, and in the pumps, but, while the charterer agreed to take that risk as to its cargo, the owner of the barge also agreed to accept the risk to the barge of that method of loading.

The owner is not entitled to recover the alleged damages for dry-docking, removing plank, replacing and recaulking plank, and detention, but is entitled to recover the full freight, as none of the cargo was lost through the negligence of the barge or her owner.

Submit decrees, dismissing the libel of the Virginia Smelting Company in the first above entitled suit, with costs to the respondent; and in the second above entitled suit, in favor of the libelant Eastern Transportation Company, against the Virginia Smelting Company, for the freight amounting to $704.-38, and, as the libelant has failed in its claim for damages and detention, the recovery will be without costs.