## SEABOARD SAND & GRAVEL CORPORATION v. JAMES HUGHES, Inc., et al. THE SEABOARD 39.

### No. 16760.

District Court, E. D. New York.

June 15, 1944.

Foley & Martin, of New York City (Christopher E. Heckman, of New York City, of counsel), for libellant.

Mahar & Mason, of New York City (Frank Mason, of New York City, of counsel), for respondent James Hughes, Inc.

Duncan & Mount, of New York City (Frank A. Bull, of New York City, of counsel), for respondent-impleaded Bethlehem Steel Co.

Macklin, Brown, Lenahan & Speer, of New York City (Gerald J. McKernan, of New York City, of counsel), for respondent-impleaded Pittston Stevedoring Corporation.

CAMPBELL, District Judge.

On March 28, 1942, libellant, through Christie Scow Corporation, chartered and let to the respondent the deck scow Seaboard No. 39, for an indefinite period of time, at an agreed rate of charter hire per day, the scow to be returned by it in the same good condition as when received by it, ordinary wear and tear excepted. This constituted a demise.

Thereafter the deck scow Seaboard No. 39 was delivered to respondent, and respondent used it in its business.

The said deck scow Seaboard No. 39, at the time of the delivery to respondent, was without motive power of its own, and at

said time the said scow was tight, staunch, strong, and in all respects seaworthy.

That subsequent thereto the said respondent chartered the said Seaboard No. 39 under a similar charter to Bethlehem Steel Company, respondent-impleaded, and delivered the said deck scow to it in a good seaworthy condition.

That subsequent thereto the said respondent-impleaded Bethlehem Steel Company entered into a contract with the Pittston Stevedoring Corporation, to load 750 tons of steel on a certain scow, the name of the scow not being given, but would be sent down.

Thereafter Pittston Stevedoring Corporation, after it was determined, how much was to be taken, finally loaded the said scow Seaboard No. 39 at Lehigh Railroad Company Docks with the steel, and the said scow was taken down around Coney Island Point to Floyd Bennett Field.

■ The respondent-impleaded Pittston Stevedoring Corporation contend that the scow Seaboard No. 39 was not improperly loaded, and further contend that she was loaded according to the instruction of the Captain, in reality attempting to substitute the limited skill of the Barge Captain for a stevedore's skill in loading a scow. This, of course, cannot be, as it has been held that it is the stevedore's obligation to properly load and stow the cargo, and that the Bargee has no duty to supervise and instruct a stevedore in the work in which it alone is experienced. Hastorf Contracting Co. v. Ocean Transportation Corporation, D.C., 4 F.2d 583; Smith and Baldwin v. Nicholson Transit Co. and M. P. Howlett Inc., D.C., 39 F.Supp. 795, 1941 A.M.C. 909.

■ It is further contended that the stevedores did not know that the scow was to go around Coney Island Point, but that it was expected she was to operate in the smooth waters of New York Harbor.

This, I think, is an error, but it does not seem to me to make any difference, because the No. 39 was not overloaded, she was improperly loaded.

(1) Because she did not have proper dunnage, that is, hardwood dunnage, and dunnage of relatively the same sizes, some of the dunnage being so soft that it was cut through, or in a way ground up; (2) because the dunnage was not placed on top of the deck stringers, but in the space between them, thus depriving the cargo of the support it would have had if the weight had come on the supported portions rather than on the unsupported portions of the deck.

■ It is further contended by the stevedores that the scow was weakened by the cross-bracing getting out of position, but I do not think this is so, because, regardless of when this occurred, and I believe it was during the loading, that cross-bracing did not, and was not intended to, aid in supporting the cargo in the spaces on deck between the stringers.

The result of the way in which she was loaded tended to throw all the weight on the deck between the stringers, rather than on them, and this caused the damage suffered by the No. 39.

A great deal of time was spent with reference to what was done, in what was called re-loading when it was determined to load the full cargo of 750 tons after they had stopped loading with a smaller cargo, but, that does not seem to change the situation in any way, as in the loading of the additional cargo, the way in which she was improperly loaded, as I have determined the same, was not changed.

■ The libellant and the Seaboard No. 39 were without fault or blame, as she was at all times seaworthy.

A decree should be entered in favor of the libellant against the respondent-impleaded Pittston Stevedoring Corporation primarily; James Hughes, Inc., secondarily; and Bethlehem Steel Company, thirdly liable, with costs and interest, and the usual order of reference.

Settle order on notice.