**RED STAR BARGE LINE, Inc.**

v.

**LURIA BROS. & CO., Inc. et al.**

**THE SEABOARD NO. 44.**

United States District Court,
S. D. New York.
Nov. 12, 1953.

Foley & Martin, New York City, for libelant, Christopher E. Heckman and Warren Martin, New York City, of counsel.

Platow & Lyon, New York City, for respondent, Edward F. Platow, New York City, of counsel.

J. Edward Lumbard, U. S. Atty., New York City, for respondent-impleaded, Charles B. Kelly and Louis E. Greco, Attys., Department of Justice, New York City, of counsel.

IRVING R. KAUFMAN, District Judge.

On January 3, 1950 libelant through Hughes Brothers, Inc. chartered to the respondent Luria Bros. & Co., Inc., the scow Seaboard No. 44 for an indefinite period, at an agreed rate of charter hire per day. Thereupon the vessel was delivered to respondent and used by it in its business. On or about January 6, 1950, respondent returned the scow to libelant in what the parties agree was a damaged condition not due to ordinary wear and tear. Libelant brought this suit for damages.

The scow was used by respondent to receive a cargo of steel scrap which re-

spondent had purchased from the United States of America and which the latter, under its contract of sale, had loaded on the scow at the New York Naval Shipyard.

Respondent denied that it was responsible for the damage to the scow and impleaded the United States of America, alleging that the damage resulted from the negligence of the Navy personnel who loaded the scow in failing to place any stiffening or proper dunnage on the deck of the scow and in concentrating the load rather than spreading it evenly across the deck.

■ The respondent-impleaded, United States of America, contends that the method used in loading the scow was careful and proper and that no damage was done by the loading. The United States of America further contends that the loading was done under the direction of the barge captain and that if the loading was improper and any damage resulted, the libelant, through the actions of its barge captain, is responsible. Although the evidence of the riggers employed by the government and produced by it at the trial is contradictory as to the exact manner in which the steel plates were loaded on the scow, I am convinced that the stowing was improper and that damage resulted. The steel plates were concentrated toward the stern of the scow and the dunnage used was insufficient and improperly placed. As a result, the weight of the steel plates was concentrated on unsupported areas of the deck stringers and caused them to break in several places.

■ Nor do I believe that the barge captain directed the loading. The testimony of the government's own witnesses, Gerlando and Koczynshi, established that the captain did no more than point out to rigger Gerlando, at the rigger's request, before the loading began, the strongest points of the barge. But the riggers admitted that on both loading days they distributed the load and laid out the dunnage themselves, without instruction or interference from the captain. Under these circumstances, the bargee who was not charged with the loading operation, had no obligation to protest or to direct the riggers on the distribution of the plates or the placing of the dunnage. Hastorf Contracting Co. v. Ocean Transportation Corp., D.C. S.D.N.Y.1923, 4 F.2d 583. It is unnecessary to decide, therefore, to what extent the captain's actions, had he been in charge of the loading, would bind the libelant, for I am convinced by the evidence that the Navy's riggers were in complete charge of the loading and consequently responsible for damage caused by their negligence. These riggers were trained and very experienced employees, and having heard their testimony, I see no reason for relieving the government, which employed them, of the duty imposed on stevedores generally to properly load and stow cargo. McGeeney v. Moran Towing Corp., 2 Cir., 1945, 149 F.2d 791; Seaboard Sand & Gravel Corp. v. James Hughes, Inc., D.C.E.D.N.Y. 1944, 56 F.Supp. 468; Hastorf Contracting Co. v. Ocean Transportation Corp., supra.

■ The United States of America further urges, that when the scow arrived at the Navy Shipyard for loading, the damage complained of was already present and that as a result the vessel was unseaworthy. I do not accept this contention. The uncontradicted testimony of the barge captain and Mr. Terry, the Marine Surveyor called by libelant, established that the scow was in good and serviceable condition when it arrived in the Navy Shipyard to receive the steel plates. Nor has any evidence been offered in support of the government's claim that the scow was unseaworthy in that it was not reasonably fit for the work to be performed—that is, to carry the steel plates—for which it was chartered. On the contrary, the evidence convinces me that properly loaded, the barge could carry well in excess of the weight of the steel plates loaded by the Navy employees. I find, therefore, that the scow was seaworthy and that the government's allegations in this

respect are not sustained by the evidence.

Finally, the government contends that the failure of the libelant and respondent to notify the United States of America of the damage before March 8, 1950, more than two months after the loading, and their failure also to invite the United States of America to attend the survey on damages made on January 10, 1950, raises an unfavorable inference against libelant and respondent as to the validity of the claim against the United States of America. It is true that the failure to give notice of damages or of a survey to a respondent may raise an inference against one alleging that the respondent's negligence caused damage. The inference seems to be a fair one, favoring any *known* person who may have suit brought against him by reason of damage and who remains unnotified. The Westchester, 2 Cir., 1918, 254 F. 576, 578; Gallagher Bros. Sand & Gravel Corp. v. Anthony O'Boyle, D.C. E.D.N.Y.1951, 94 F.Supp. 788, 792.

But here, it is far from certain that the inference should run in favor of the government since the libelant brought suit against the respondent, Luria Bros. & Co., Inc. only and Luria was notified and was represented at the survey. The United States of America was brought into this suit by Luria and not by libelant. Indeed, it is strongly urged that the libelant could not have directly sued or claimed against the government. Furthermore, the interests of Luria Bros. whose representative was present at the survey, were not adverse to the interests of the United States of America in minimizing the damages in the survey. Their interests on this aspect of the case were the same. I cannot accept the contention that lack of notice should lead to the inescapable inference that the libelant was trying to conceal any facts as to damage from the United States of America and hence on this score alone, the libelant should be out of court. Shepard S. S. Co. v. United States, 2 Cir., 1940, 111 F.2d 110, 113. True, if the inference is a fair one to be drawn against the libelant, and I am not at all sure that it is in this case, at best it is merely "a circumstance tending to dilute the respondent's asserted cause, but not to the vanishing point * * *". Gallagher Bros. Sand & Gravel Corp. v. Anthony O'Boyle, supra [94 F.Supp. 792]. I am of the opinion that all the evidence in this case has easily overcome in libelant's favor any unfavorable inference that may be drawn from the failure to promptly notify the government of the damage and survey.

I cannot believe that the government was prejudiced by libelant's conduct, in the light of all the facts in this case. Apart from its mere claim that it was prejudiced the government has not established with any convincing character that it was, in fact, so prejudiced. Prejudice, if any, in the light of all the evidence was not of such character as to defeat libelant's claim.

A decree will be entered in favor of the libelant against the respondent-impleaded, United States of America, primarily, and against the Luria Bros. & Co., Inc. secondarily.