UNITED STATES of America, as Owner of THE S.S. BYRON DARNTON, Libelant-Appellee,

v.

THE BULL STEAMSHIP LINE, Respondent-Appellant.

No. 36, Docket 25595.

United States Court of Appeals Second Circuit.

Argued Nov. 5, 1959.

Decided Feb. 15, 1960.

Atkins & Weymar, New York City (Horace T. Atkins, New York City, of counsel), for appellant.

George Cochran Doub, Asst. Atty. Gen., S. Hazard Gillespie, Jr., U. S. Atty., S.D.N.Y., New York City, Samuel D. Slade, Washington, D. C., Benjamin H. Berman, Walter L. Hopkins, Attys., Dept. of Justice, New York City, for appellee.

Before CLARK, HINCKS and WATERMAN, Circuit Judges.

WATERMAN, Circuit Judge.

The United States, as owner of the S.S. Byron Darnton, brought this libel against the respondent, which, in the performance of stevedoring services, loaded that vessel. Libelant seeks recovery for damages to the Byron Darnton and also indemnity for the amount libelant paid the cargo owner for damage to cargo while in the hold of the Darnton. Libelant alleges that respondent, in loading steel plates aboard the Darnton, negligently permitted one plate to puncture a bulkhead and that damage to these steel plates later resulted therefrom when oil in an adjoining deep tank leaked through the puncture onto them. In a forceful and painstaking reported opinion, D.C.S.D.N.Y.1956, 146 F.Supp. 210, Judge Bondy entered an interlocutory decree in favor of libelant and referred the case to a Special Commissioner to ascertain damages. Incorporating the damages thus ascertained, a final decree was entered on February 13, 1959, and from this final decree respondent has appealed.

Certain facts are undisputed. In 1945 the Darnton traveled from Charleston, South Carolina to Venice and Trieste, Italy. It then traveled to Leghorn, Italy, where it loaded cargo which it carried to Batangas, Philippine Islands. It returned to Baltimore in ballast to undergo overhaul and to obtain new cargo. The overhaul and inspection was completed, and on January 10, 1946 respondent began loading heavy steel plates into the Darnton's No. 4 lower hold. This operation was completed on Thursday, January 17. On Friday, January 18, two thousand ten barrels of fuel oil were pumped into No. 3 deep tank whose after bulkhead also served as the forward bulkhead for No. 4 lower hold. This additional oil raised the level of the oil to twelve feet, seven inches above the bottom of No. 4 lower hold. On Monday, January 21, a five-foot accumulation of oil was discovered

in No. 4 lower hold, and a further examination revealed a puncture about three inches in length and one half inch in width in the bulkhead common to No. 4 lower hold and No. 3 deep tank. It is agreed that the oil found in No. 4 lower hold had leaked out of No. 3 deep tank through this puncture.

The district court found that the damage to the bulkhead occurred during the time that respondent was loading the vessel; that the most reasonable causal explanation for this damage was that it occurred when one of the steel plates swung forward in the course of loading; and that such an occurrence constituted negligent stowage for which libelant was entitled to recover.

■ Respondent first challenges Judge Bondy's finding that the damage to the bulkhead occurred during the period when the plates were stowed. Respondent argues that the accident occurred earlier. It offers in support of its position an entry from the Darnton's deck log dated July 21, 1945, which records that while cargo was being unloaded in Venice a heavy metal beam was dropped into No. 4 lower hold. Judge Bondy rejected this argument, relying upon the fact that in the interval between the Venice incident and the beginning of respondent's loading operations at Baltimore No. 3 deep tank had once been filled to a depth of 20 feet without any subsequent effect upon the cargo in No. 4 lower hold, and also upon the further fact that No. 4 lower hold had been inspected on the day before respondent began loading and no puncture was then discovered. Judge Bondy's findings are clearly proper.

Secondly, respondent contends that libelant offered no evidence tending to prove that respondent's conduct caused the accident. True, there was no eyewitness testimony to this effect, but we know of no rule of law which forbids circumstantial proof thereof. The significant circumstances that point to respondent's liability are the manner in which the steel plates were loaded into the hold, and the nature of the damage done the bulkhead.

The dimensions of No. 4 lower hold were 45 feet fore and aft, 55 feet athwartships, and 28 feet to the 'tween deck where the hatch was 30 feet fore and aft and 20 feet athwartships. The plates, some of which had pointed corners, were of various sizes. The largest had a maximum thickness of $\frac{3}{4}$ inches, a maximum weight of seven tons, and, most important, a maximum length of forty feet. The plates were to be stowed, one on top of another, in a fore and aft position in the after port corner of the hold. Thus, because of the size of the plates and the place where they were to be stowed, it was necessary first to lower the plates with the longest dimension in a vertical position and then, not only to lower the highest end into a horizontal position, but also, as the lower end of each plate rested on the preceding plate, to use it as a pivot in order to twist the plate so that it would lie, when horizontal, fore and aft in the after port corner.

The bulkhead was of steel plate five-eighths of an inch thick. On the No. 4 side this was covered by wooden sheathing two and five-eighths inches thick. There were two inches of insulated space lying between covering and plate. The puncture in the bulkhead was directly behind a puncture in the wooden sheathing and was of the same distinctive one-half inch thickness. It would seem obvious that the two punctures were caused by the same blow.

The sheathing puncture was twelve inches in length, the bulkhead puncture was three inches in length, and the punctures were located at a point fifteen to twenty feet to port of center of the bulkhead. When these facts are combined with the additional fact that the width of the punctures corresponded to the average thickness of the plates being stowed, Judge Bondy's conclusion is an inescapable one that the accident occurred when a plate whose lower end had been dropped too far forward, was pivoted into its fore and aft position.

Respondent places considerable emphasis upon the fact that the puncture was located twelve feet above the bottom of the hold, that the puncture lines were both horizontal, and that the piled cargo of steel plates, when fully stowed, was but five feet high. Since the plates were lowered in a vertical position respondent claims that the puncture could not have been caused during the loading of the plates. However, respondent overlooks the fact that these plates were pivoted from the vertical position into a fore and aft horizontal position.

Proof that respondent's conduct caused the puncture in the bulkhead appears to us to be overwhelming and, therefore, any possible misreliance by Judge Bondy, as respondent claims, upon Sternberg Dredging Co. v. Moran Towing & Transp. Co., 2 Cir., 1952, 196 F.2d 1002, 1006 is immaterial.

There remains the issue of whether respondent's conduct in causing the accident as above described can be said to have been negligent conduct. The accident occurred because the lower end of one steel plate was allowed to remain too far forward when respondent's employees began to pivot the plate into a fore and aft horizontal position. This error could have been rectified by a little additional care. We have no difficulty in holding that failure to exercise this care constituted negligence. The fact that loading the large steel plates was a difficult undertaking calling for a high degree of professional skill does not save respondent. Respondent held itself out as possessing this professional skill. If respondent had concluded that it could not perform the job without substantial risk of damage to the vessel and resultant damage to the plates being stowed, or to other cargo, it should have so notified libelant. O'Brien Bros. v. United States, 2 Cir., 1948, 171 F.2d 586; The Robert R., 2 Cir., 1918, 255 F. 37. The fact that at various times officers of the Darnton witnessed the loading operations is not significant, McGeeney v. Moran Towing Corp., 2 Cir., 1945, 149 F.2d 791.

Affirmed.