SMITH et al. v. NICHOLSON TRANSIT CO. et al.

No. 2116.

District Court, W. D. New York.

April 25, 1941.

Brown, Ely & Richards, of Buffalo, N. Y., and Mahar & Mason, of New York City (Laurence E. Coffey, of Buffalo, N. Y., and Frank C. Mason, of New York City, of counsel), for libellants.

Hill, Hamblen, Essery & Lewis, of Detroit, Mich., Sanders, Hamilton, Dobmeier, Connelly & McMahon of Buffalo, N. Y., for respondents Nicholson Transit Co., and Steamer Tampico.

Hagen & Eidenbach, of New York City, Campbell & Campbell of Buffalo, N. Y., (Henry C. Eidenbach, of New York City, of counsel), for respondent-impleaded.

KNIGHT, District Judge.

This libel was filed against the steamer Tampico by Eustis R. Smith and James Baldwin, owners of the barges William E. Hanley and Margaret A. Hanley. The Nicholson Transit Company, owner of the Tampico, agreed to transport a cargo of steel ingots from Cleveland to New York City.. When the Tampico arrived at Buffalo, the cargo was loaded upon barges. The Margaret A. Hanley and the William E. Hanley were two of the barges receiving part of the cargo. When the cargo was unloaded in New York the ceiling planks were found to be badly damaged, and the Margaret A. Hanley had a broken hanging knee near the number two hatch. A survey was held immediately. There was no evidence that the barges were unseaworthy in any respect.

The steel ingots varied in length and weighed from four to eight tons each. M. P. Howlett, Inc., a stevedoring company was hired to load the barges. They have been impleaded by the Nicholson Transit Company. The cargo was transferred from the Tampico to the barges by the crane of the Tampico. The cranesman was a member of her crew but he followed the instructions of a signalman employed 'by the stevedoring company. The libellants allege that the damage resulted from the negligent operation of the crane and from the use of insufficient rollers and inadequate dunnage.

The witnesses called by M. P. Howlett, Inc., and by the Nicholson Transit Company testified that the crane was properly operated. The master in charge of the two barges testified that the crane was so operated that drafts of the cargo were allowed to fall two or three feet upon several occasions. There was no direct testimony showing the manner in which the hanging knee of the Margaret A. Hanley was broken. From its location the only plausible conclusion that can be drawn is that it was struck by a draft of cargo when the crane was lowering it.

Rollers were used to move the ingots under the decks and the cabin. A witness called by said stevedoring company testified that when these rollers were first used in the unloading they were perfectly cylindrical. They were five inches in diameter, between twenty inches and two feet in length, and made of quarter inch iron. After the work was completed, one of the rollers, while still round at one end, had had the other end flattened. It must have received a considerable blow to put it in its present condition. Considering all the testimony that of the master of the barges is more plausible as to the manner in which the crane was operated.

The libellants contend that the damage not caused by the negligent operation of the crane was caused by the use of insuffi-

cient rollers and inadequate dunnage. The witnesses for M. P. Howlett, Inc., testified that in moving the ingots under the decks three, four or five rollers would be used. There must necessarily have been a large concentration of the weight of the ingots upon a small space under this method. There was also testimony that the dunnage used to distribute the weight of the cargo was too short to properly fulfill its function.

■ The respondent and the respondent-impleaded disagree as to who owed the duty of furnishing the dunnage. The bill of lading required the Tampico to deliver the cargo to the Republic Steel Corporation in New York, or to its assignee. The Tampico would have to make this delivery in a manner which would not injure the cargo or the place where the cargo was delivered. I think therefore that the Tampico owed the duty of furnishing the dunnage.

■ This does not relieve M. P. Howlett, Inc., from liability. Stevedores owe the duty of properly loading the boat. If they knew or should have known that the method of loading was causing damage they should have stopped work. They were not given the right to use improper rollers or dunnage merely because they were furnished by a third person. The men should have realized that damage was being done as the loading continued. They should have stopped their operations until the boat furnished proper dunnage.

■ The respondents introduced testimony that no complaints were made to them concerning the loading of the barge. The master of the barges on the other hand testified that he complained not only to the representative of M. P. Howlett, Inc., in charge of operations but also to the officer in charge of the Tampico. Whether such complaints were made or not is immaterial in this case. The case of Hastrof Contracting Co. v. Ocean Transportation Corp., D.C., 4 F.2d 583, holds that the bargee is not required to give instructions on the proper method of loading the cargo when he might fairly rely upon the belief that those undertaking to load the barge knew the proper method of loading. In this case the master could have reasonably believed that M. P. Howlett, Inc., could load his barge without instructions. The damage was not caused because the master neglected to tell the stevedores about the peculiarities of the barge.

Whether the Master complained or not makes no difference.

■ Where, as here, two parties are responsible for injury to a third, each is primarily liable for one-half the damages. The respondent and the respondent-impleaded should each pay one-half the damages, and if any part of the damages assessed against one of the respondents can not be collected from that respondent the balance may be assessed against the other respondent in addition to the one-half which that respondent is compelled to pay in the first instance. Benedict on Admiralty, Fifth Ed., Vol. I, section 416; The Atlas, 93 U.S. 302, 23 L.Ed. 863; The North Star, 106 U.S. 17, 1 S.Ct. 41, 27 L.Ed. 91; The Sterling, 106 U.S. 647, 1 S.Ct. 89, 27 L.Ed. 98; Great Lakes Towing Co. v. Masaba S. S. Co., 6 Cir., 237 F. 577.

Decree for the libellants is granted, and the usual order of reference will be made.