AMERICAN PRESIDENT LINES, Ltd., a corporation, Appellant,

v.

MARINE TERMINALS CORP., a corporation, Appellee.

No. 14959.

United States Court of Appeals Ninth Circuit.

June 14, 1956.

Rehearing Denied July 19, 1956.

See also, 128 F.Supp. 603.

Lillick, Geary, Olson, Adams & Charles, Edwin L. Gerhardt, Gordon L. Poole, San Francisco, Cal., for appellant.

Boyd & Taylor, Fredric G. Nave, M. K. Taylor, San Francisco, Cal., for appellee.

Before HEALY and CHAMBERS, Circuit Judges, and HAMLIN, District Judge.

HAMLIN, District Judge.

This action was brought in the District Court for the Northern District of California, Southern Division, by appellant, American President Lines, Ltd., a Delaware corporation, hereinafter called American, against Marine Terminals Corp., a Nevada corporation, appellee, hereinafter called Marine, to recover indemnity in the amount of $62,500. This amount was the sum which American had paid to Robert B. Williams, a longshoreman employed by Marine, in settlement for injuries received by Williams on January 30, 1952, while he was aboard the steamship President Polk, a vessel owned by American, and was performing stevedoring work thereon pursuant to a contract between American and Marine for stevedoring services on American's vessels. The case was tried to the Court without a jury and the District Court rendered judgment for Marine, the defendant there, denying the indemnity sought by American. This appeal is from that judgment. No contention is made here that American was not liable for the amount it paid to Williams or that the amount is not reasonable. The sole question presented is whether or not under the circumstances American is entitled to indemnity from Marine for the amount it was required to pay.

Prior to the injury appellant American and appellee Marine, a stevedoring con-

tractor, entered into a written contract for stevedoring services to be performed aboard appellant's vessels. The contract between American and Marine was introduced in evidence. This contract contained no agreement, covenant or language of indemnity, but did provide *inter alia* as follows: That Marine should—

"* * * b. Provide all necessary stevedoring labor, including winchmen, hatch tenders, tractor and fork lift operators, foremen and such other stevedoring supervision as are needed for the proper and efficient conduct of the work and for the vessel's utmost dispatch.

"c. Adjust rigging of booms, guys and other ordinary cargo tackle at hatches where work of discharging and/or loading will be conducted as required in the operation, and readjust when completed. Remove and replace beams, hatch covers and tarpaulins."

On January 29, 1952, a stevedoring gang employed by Marine boarded the vessel *SS President Polk* to discharge cargo from Number 1 Hatch. On that day the chief officer of appellant told Bleile, the walking boss for Marine, to keep his eyes open because he believed there were some beams (also called "strongbacks") aboard with no locks and that such beams should be removed to the deck. Bleile testified, "He [chief officer] called me below. He said, 'Will you keep your eyes open? I believe I have strongbacks here which have no locks.'" Bleile instructed the stevedoring gangs at work to remove excess beams from Number 1 Hatch and to place them on the deck. Work continued that afternoon and on the following morning, January 30th, the stevedoring gang came aboard to uncover Number 1 Lower Hold and to load cargo into that hold beneath the beam in question. The forward section between the hatch coaming and the Number 2 Beam was removed by the longshoremen for the first time on January 30th to permit access to the lower hold, partially exposing the Number 2 Beam and revealing the missing locking device. The remaining sections of hatch boards were left in place, leaving only one section of the hatch open. Randolph, a gang steward employed by appellee, primarily charged with responsibility for safety, noticed shortly after the work began that the safety lock or latch was missing on Number 2 Strongback. He knew that this was an unsafe condition in view of the fact that loading operations were being conducted beneath this beam. Randolph, upon discovery of this condition, reported it to his gang boss Swanson and to the walking boss Bleile, both employees of appellee. Swanson recognized that this condition constituted an unsafe condition, but did nothing about it. The work continued in the face of this knowledge until the accident occurred. The winchman testified that when only one section of the hatch was open, it presented too small an opening for the working of cargo. With the vessel down by the stern, the bridle in its movements up and down through the hatch opening swung toward the after end of the hatch so that it would strike against the partially exposed unlocked Number 2 Strongback.

The loading of the cargo here was conducted in the following manner: Oil drums were picked up off the dock by a bridle and sling operated by the winchman, and were lowered through the hatch opening into the hold where Williams and the other men would release the bridle from the drums. The winch driver would then raise the empty bridle out of the hatch with a swinging motion. Just prior to the accident Williams had released the bridle from some oil drums and as he attempted to check the swing of the bridle, the winchdriver pulled the bridle and hook up and away, and on its way up the bridle and the hook thereon hit the Number 2 Strongback, dislodged it and toppled it into the hold below where it struck Williams. It was stipulated that the safety lock on the Number 2 Strongback was missing before the accident.

At the time of the accident there was no testimony that any officer of appellant

was present at the scene of the operation in Number 1 Hold. Bleile testified that it was the practice for the gang steward to remove any unsafe condition found by the steward, and that he, Bleile, had given instructions to the gang boss on the day before the accident to stop the work and remove beams that were found unsafe. Swanson, the gang boss, admitted that he had been told of the unsafe condition by Randolph, and that it was his duty to report it to the walking boss, but that he had not done so.

Appellant contends that it is entitled to recover indemnity from appellee stevedoring contractor upon the following grounds:

"1. That the conduct of American in providing a strongback without a locking device was at most proof of unseaworthiness, and that Marine was guilty of negligence in knowingly loading cargo under unsafe conditions, in negligently failing to remove the unsafe and lockless strongback during the work, and operating the bridle, sling and hook in close proximity to and against the unlocked strongback; that the negligence of Marine solely and proximately caused the accident; and that indemnity should be awarded in favor of appellant under common law.

"2. That even if it might be said that American was negligent in providing the strongback without a locking device, such negligence was passive and secondary, while Marine was actively and primarily negligent, and under such conditions Marine should pay indemnity.

"3. That under the doctrine of Ryan Stevedoring Co., Inc., v. Pan-Atlantic Steamship Corp., 350 U.S. 124, 76 S.Ct. 232, even in the absence of an express agreement of indemnity, a stevedoring contractor is obligated to reimburse a shipowner for damages caused to the shipowner by the contractor's negligent performance of his stevedoring contract."

In support of appellant's first contention that it is entitled to indemnity because it was guilty of only unseaworthiness and not negligence at all, while the negligence of Marine was the primary cause of the accident, it relies on States S. S. Co. v. Rothschild International Stevedoring Co., 9 Cir., 205 F.2d 253; Berti v. Compagnie De Navigation Cyprien Fabre, 2 Cir., 213 F.2d 397; Valerio v. American President Lines, D. C.N.Y., 112 F.Supp. 202. On the record before us, it cannot be said that the liability of American to Williams was based only upon unseaworthiness and not upon negligence. In the suit brought in the state court by Williams against American, the complaint alleged both unseaworthiness and negligence. The original complaint in this present action alleged that the suit by Williams against American was compromised because of the liability of American based on unseaworthiness. Thereafter, the complaint was amended to allege, *inter alia,* that the liability of American was based upon unseaworthiness and negligence. This allegation was denied by the defendant, but the District Court below found that American was negligent, and while it variously characterized that negligence as passive and joint and concurrent, its basic finding of negligence is not clearly erroneous and cannot be set aside. Thus, it cannot be said that the only liability of American was for unseaworthiness, and the questions raised by this appeal will not be decided on this ground urged by the appellant in its first contention. Therefore, we turn to other grounds urged by the appellant as alternatives.

Under the second contention of appellant that its negligence, if any, was passive and secondary while the Marine negligence was primary and active, appellant relies in the main upon U. S. v. Rothschild International Stevedoring Co., 183 F.2d 181, 182, decided by this Court. In that case the stevedoring company used a winch supplied by the ship, knowing it to be defective, and while so using it the accident happened, causing the damages for which indemnity was

sought. The Court there said, "It is clear that both the United States [the shipowner] and Rothschild were negligent. It seems equally clear that Rothschild had warning of the defect which was the immediate cause of the accident. With this knowledge Rothschild should not have permitted Dillon to work in this dangerous circumstance as to which it was fully informed." The Court quoted from Restatement of Torts, § 441, as follows:

" '(2) The cases in which the effect of the operation of an intervening force may be important in determining whether the negligent actor is liable for another's harm are usually, but not exclusively, cases in which the actor's negligence has created a situation harmless unless something further occurs, but capable of being made dangerous by the operation of some new force and in which the intervening force makes a potentially dangerous situation injurious. In such cases the actor's negligence is often called passive negligence, while the third person's negligence, which sets the intervening force in active operation is called active negligence.' " 183 F.2d 181, 182.

In the Rothschild case this Court held that under the circumstances indicated above, the United States was entitled to full indemnity over against the stevedoring company.

In the instant case the Court below found that "the plaintiff's negligence was passive and that the defendant continued to work with the knowledge of the dangerous condition of the defective strongbacks."

Under these views it would appear that American being guilty of passive negligence could recover indemnity from Marine because of its active and primary negligence in permitting the work to continue under known unsafe conditions.

However, if our decision were to be placed upon this ground, there would remain the further question of whether indemnity upon this basis were barred by the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq. This question was expressly left open by the Supreme Court in their decision in the Ryan case, 350 U.S. 124, 133, 132 footnote 6, 76 S.Ct. 232, 237, footnote 6. Therefore, we prefer not to rest our decision upon this ground.

We now consider whether the decision in the Ryan case controls the decision here, as appellant urges in its third contention. In that case a longshoreman employed by Ryan Stevedoring Company was injured aboard a vessel when one of the paper rolls he was unloading broke loose and rolled over him because the rolls had no chocks, or supports, under them. The longshoreman sued the shipowner, and this suit was tried before a jury on the issues of unseaworthiness and negligence. The jury returned a general verdict for the longshoreman. The shipowner impleaded Ryan, seeking indemnity, and this action was tried by the Court on the record produced in the jury action. The evidence showed that Ryan had failed to put the chocks under the rolls when it loaded the cargo at a distant port and thus had improperly stowed the cargo. However, the ship's officer charged with supervising the stowage had failed to notice and correct this improper stowage of cargo. The Court denied indemnity and rendered judgment for Ryan. Palazzolo v. Pan-Atlantic S. S. Corp., D.C.N.Y., 111 F. Supp. 505. On appeal to the Second Circuit, the judgment for the longshoreman was affirmed, but the judgment denying indemnity was reversed, upon the authority of the rule that indemnity is recoverable where the employer's negligence is the "sole", "primary" or "active" cause of the accident. Palazzolo v. Pan-Atlantic S. S. Corp., 211 F.2d 277, 279.

The decision of the Court of Appeals permitting indemnity was appealed to the Supreme Court and was affirmed by an equally divided Court in a memorandum opinion. Ryan Stevedoring Co. v. Pan-Atlantic S. S. Corp., 349 U.S. 901,

758

75 S.Ct. 575, 99 L.Ed. 1239. The case was reargued before a full Court and the decision of the Court of Appeals affirmed, four members of the Court dissenting. The opinion of the Court dealt with two questions. The first was whether indemnity was barred by the provisions of the Longshoremen's and Harbor Workers' Compensation Act, 33 U.S.C.A. § 901 et seq.; the second was whether, in the circumstances presented, Ryan was liable in indemnity. In answering the first question in the negative and the second in the affirmative, the Court proceeded solely on the basis of the contract existing between the parties. The Court stated, "Because respondent in the instant case relies entirely upon petitioner's contractual obligation, we do not meet the question of a noncontractual right of indemnity or of the relation of the Compensation Act to such a right." 350 U.S. at page 133, 76 S.Ct. at page 237; see also 350 U.S. at page 132 footnote 6, 76 S.Ct. at page 236. The contract between the parties contained no covenant of indemnity. The Court stated:

"The shipowner here holds petitioner's uncontroverted agreement to perform all of the shipowner's stevedoring operations at the time and place where the cargo in question was loaded. That agreement necessarily includes petitioner's obligation not only to stow the pulp rolls, but to stow them properly and safely. Competency and safety of stowage are inescapable elements of the service undertaken. This obligation is not a quasi-contractual obligation implied in law or arising out of a noncontractual relationship. It is of the essence of petitioner's stevedoring contract. It is petitioner's warranty of workmanlike service that is comparable to a manufacturer's warranty of the soundness of its manufactured product."

From the agreement, the Court implied that Ryan agreed to perform those services properly and safely in a workmanlike manner, and that this "amounts" to an agreement to hold the shipowner harmless for any damages caused it by breach of the stevedore's implied duty to perform his work safely. Since agreements to indemnify are not barred by the Compensation Act, indemnity was held not barred, and since the evidence showed that Ryan had not loaded the cargo in a safe and proper manner, it was held liable in indemnity.

The contract here also contains no language of indemnity. But it appears to provide a fuller and surer basis for implying a duty to perform services in a safe and proper manner. As set out above, Marine by its contract agreed to provide all labor and supervision necessary "for the proper and efficient conduct of the work and for the vessel's utmost dispatch." Furthermore, it agreed to "remove and replace beams  *  *  *." When the shipowner through its ship's officer informed Marine that some of the beams were defective and requested that all excess beams be removed, Marine, knowing that Number 2 Strongbeam had no lock, was under a specific duty to remove that beam. By failing to remove the beam and by continuing with the work under these hazardous conditions known to it, Marine breached its implied contractual duty to do its work in a safe and workmanlike manner.

The learned trial judge below did not have the benefit of the decision of the Supreme Court in the Ryan case, it having been decided subsequently to the opinion and judgment of the District Court rendered herein. Hence, the District Court did not proceed on this theory and entered no findings with respect to it.

The appellee contends that the Ryan case is distinguishable on two grounds: (1) The Ryan case only held that the Compensation Act does not bar indemnity; (2) The shipowner in the Ryan case was not negligent and was liable in damages only for an unseaworthy condition which it did not create, whereas in the case at bar, the contention is that the shipowner negligently caused the accident by supplying a defective strong-

back. The Ryan case did hold that the Compensation Act was no bar to indemnity based upon the breach of a contractual obligation. But we think that the Ryan case also held something more. It held that the shipowner is entitled to indemnity from the stevedore for damages caused the shipowner by the breach of an implied contractual obligation by the stevedore to perform its services in a safe and workmanlike manner. And the decision of the Court of Appeals in the Ryan case, in holding the shipowner liable to the longshoreman, expressly recognized that the basis of that liability was either or both unseaworthiness or negligence. 211 F.2d 279. The Supreme Court, in affirming this decision, recognized that the Court of Appeals premised the shipowner's liability on both grounds.

It is true that in the Ryan case, the shipowner did not furnish a defective strongback. But there was evidence that the shipowner had failed to provide the proper chocks, as was his duty. See 350 U.S. at page 139, 76 S.Ct. at page 240. But more importantly, we do not think that under the facts of this case it is at all material that the shipowner's negligence here arose from faulty strongbacks while in the Ryan case it arose from faulty supervision. Here, Marine was charged with notice before the accident from the ship's officer that some strongbacks were defective and from its own employees that the particular strongback involved here had no lock and was unsafe. It would have taken little time to remove the lockless beam. And there was testimony that it was the usual practice to lower the sling through as large an opening as possible. The longshoremen were aware that the sling had a tendency to swing back and forth, and that if the swing went unchecked, it was likely to strike something. Marine was in full control of the work and was in charge of this very situation. After Marine was notified of the defective beams by the shipowner, the shipowner did nothing to increase the hazard or to cause the breach of contract by Marine.

Marine openly and plainly breached its obligation to perform its work in a safe manner. We think it is no defense to that breach that American supplied the defective beam. The record shows that the negligence of the shipowner and the unseaworthiness of its ship were passive and secondary forces in causing the injury to Williams, and that the breach of obligation by Marine was the sole active or primary conduct causing the injury.

In the Ryan case it was contended by the stevedore that indemnity should not be allowed because the shipowner had been negligent in supervising the stowage of the cargo. The Supreme Court rejected that contention by saying, "Whatever may have been the respective obligations of the stevedoring contractor and of the shipowner to the injured longshoreman for proper stowage of the cargo, it is clear that, as between themselves, the contractor, as the warrantor of its own services, cannot use the shipowner's failure to discover and correct the contractor's own breach of warranty as a defense. Respondent's failure to discover and correct petitioner's own breach of contract cannot here excuse that breach." 350 U.S. 134–135, 76 S.Ct. 238. We are not concerned here with a situation in which the stevedore's breach of duty brings about the injuries by operation upon a prior condition caused by the shipowner's negligence which is unknown to the stevedore. Here the stevedore was fully informed of the fact and of the possible consequences of the shipowner's negligence or of the ship's unseaworthiness, and in face of all that proceeded to breach its duty so as to make that negligence an immediately dangerous force. It is true that here, unlike Ryan, there was an act of unseaworthiness or negligence by the shipowner prior to the conduct of Marine, and that the shipowner's negligence consisted of failing to supply a proper device, rather than a failure to discover and correct the breach of duty as in the Ryan case. But this is no ground of distinction, for in the case at bar, as in Ryan, it was the stevedore's breach of

duty that created the danger and made it an active condition with immediately foreseeable consequences of personal injury.

Indeed, the Court below found that "the plaintiff's negligence was passive and that the defendant continued to work with the knowledge of the dangerous condition of the defective strongbacks." (Finding No. 12.) The Court also found that it was the duty of the shipowner to supply, repair and maintain the locking device involved. The Court concluded from these facts, that both parties were jointly and concurrently negligent.

There thus appears to be a conflict between the findings of fact and the conclusions of law of the trial court.

■ Since there appears to be such a conflict, we are bound to accept the findings of fact which are not clearly erroneous, but we are not required to adopt the conclusions of law, but are free to adopt our own conclusions of law in the light of the facts and the applicable law.

The facts found by the court below are in no way inconsistent with our conclusion that the conduct of Marine in performing its operations under knowingly unsafe conditions was the active and primary negligence which proximately caused the accident.

The appellee also urges that the decision in Halcyon Lines v. Haenn Ship Ceiling and Refitting Corp., 342 U.S. 282, 72 S.Ct. 277, 96 L.Ed. 318, bars indemnity here. That decision was relied on by the lower court in holding that recovery by the shipowner was barred. However, the Supreme Court in the later Ryan case expressly held that in an action for indemnity based upon breach of a contractual duty, the holding in the Halcyon case was not applicable, it being an action for contribution from a joint tortfeasor and not an action for indemnity. The Ryan case also indicated that American Mutual Liability Ins. Co. v. Matthews, 2 Cir., 182 F.2d 322, was similarly distinguishable. Hence, we do not think that the decisions in the Halcyon and Matthews cases govern the issues here.

In the case at bar, the stevedoring contract more definitely and surely implies an obligation by the stevedore to perform his services in a safe and workmanlike manner than did the contract in the Ryan case. The facts of this case show that this obligation was plainly and openly breached. We hold, therefore, that the Ryan case squarely controls this case and that we are bound by the Ryan case.

The judgment is reversed with directions to enter judgment for appellant granting indemnity over.