Dante PARENZAN, Plaintiff,

v.

IINO KAIUN KABUSHIKI KAISYA, also known as Kokusai Line, a corporation, and States Marine Corporation, a corporation, Defendants.

IINO KAIUN KAISHA, Ltd., Defendant and Third-Party Plaintiff-Appellee,

v.

INTERNATIONAL TERMINAL OPERATING CO., Inc., successor to the Jarka Corporation, Third-Party Defendant-Appellant.

No. 133, Docket 24684.

United States Court of Appeals Second Circuit.

Argued Dec. 13, 1957.

Decided Feb. 5, 1958.

Kirlin, Campbell & Keating, New York City (Roland C. Radice, Vernon S. Jones

and Samuel L. Albarino, New York City, on the brief), James B. Magnor, New York City, for appellee.

Garvey & Conway, New York City (George S. Pickwick, New York City, on the brief), for appellant.

Before MEDINA, LUMBARD and WATERMAN, Circuit Judges.

LUMBARD, Circiut Judge.

On November 24, 1952 the plaintiff Dante Parenzan, a longshoreman, was injured on the M. V. Tomishima Maru, a freighter owned and operated by the defendant-third-party plaintiff, the Iino Kaiun Kaisha, Ltd. The vessel was docked at Pier 1, Erie Basin, Brooklyn, and was being unloaded by the Jarka Corporation, Parenzan's employer and the corporate predecessor to the third-party defendant.

Parenzan had started work in a crew of some 21 longshoremen at 8:00 A.M. on the morning of the 24th. The crew was detailed to unload hatch No. 2 of the Tomishima Maru under the direction of Nicholas Di Costanzo, a 16 year old gang foreman. After removing the hatch cover, Di Costanzo testified that he saw dunnage on top of the cargo and ordered the men to throw it out of the way. The dunnage consisted of strips of light wood placed between the different size crates to even the tiers of cargo. The evidence showed that pieces of it were broken and split, and that Di Costanzo noting this had warned the men to be careful.

The unloading had been in progress for about an hour and a half and one or more tiers of crates had been removed, when Parenzan stepped on a crate supported by some of this unfit dunnage and the dunnage gave way under his weight causing him to fall on the base of his spine. He sought recovery for the resulting injuries from the shipowners alleging unseaworthiness and negligence. The case was settled for $6,500, an amount all parties agree was reasonable.

By the instant action the shipowners seek indemnity for the amount of the settlement from the stevedoring firm on two theories: (1) that the stevedoring firm was negligent in permitting Parenzan to work in a dangerous area without adequate supervision; and (2) that the stevedoring firm breached the warranty implied in the stevedoring contract that it perform the work in a competent and safe manner.

At trial Parenzan and Di Costanzo testified to the facts above stated and John Virgona, Parenzan's work partner, corroborated their testimony. The third-party plaintiff also called Paul J. Keeler as a stevedoring expert. He testified that when unfit dunnage is found in a hold it is the usual practice to put in a flooring of good dunnage or of stevedore's pallets before allowing the men to unload from that hold. No witnesses were called by the third-party defendant nor was there a motion for a directed verdict.

At the conclusion of the trial Judge Weinfeld put five questions to the jury. These questions and the jury's answers were as follows:

"Q. Was defective or unfit dunnage the cause of the accident to Parenzan? A. Yes.

"Q. If your answer to question 1 is Yes, did the defendant, International Stevedoring Company, through its hatch foreman, Di Costanzo, know as the unloading of the cases progressed from 8:30 a. m. to 10:00 a. m., that defective or unfit dunnage had been used? A. Yes.

"Q. If your answer to question 2 is Yes, were there any precautions which the defendant, that is the stevedoring company, in the exercise of reasonable care, could have taken to correct conditions and render the working area safe? A. Yes.

"Q. If your answer to the foregoing question No. 3 is Yes, did the defendant take such reasonable precautions to correct conditions and render the area where the men worked safe? A. No.

"Q. If your answer to question 4 is No, then did the failure to take

such reasonable precautions render the working area unsafe and was such failure the cause of the accident to Parenzan? A. Yes."

Judgment was entered for the shipowner on the special verdict.

On this appeal the third-party defendant raises three issues: (1) that there was no substantial evidence of notice of the improper stowage; (2) that the third-party defendant was not shown to be actively negligent; and (3) that the shipowner must be considered *in pari delicto* with the stevedoring firm and thus barred from recovery.

 First, since the third-party defendant did not move for a directed verdict, the sufficiency of the evidence of notice is not properly before us, and we need not pass on it. See Rotondo v. Isthmian Steamship Co., 2 Cir., 1957, 243 F.2d 581 and the cases cited therein.

Secondly, when a person is said to be "actively negligent" so that he is required to indemnify a joint tortfeasor, it means only that he was the primary or principal wrongdoer. McFall v. Compagnie Maritime Belge, 1952, 304 N.Y. 314, 107 N.E.2d 463. In the instant case the appellant's negligence was shown to be active. With knowledge of the defective condition of the stow, the stevedoring company continued the unloading without taking corrective measures, and its negligence was the proximate and primary cause of the injury to Parenzan. American President Lines v. Marine Terminals Corp., 9 Cir., 1956, 234 F.2d 753.

Lastly, the shipowner cannot be said to have been *in pari delicto* with the appellant. True it had the duty to see that the stow was proper and this duty was breached. But the breach of this duty was merely a condition which set the stage for what followed: in this case, the defendant's negligence in operating with inferior dunnage. American President Lines v. Marine Terminals Corp., supra. Furthermore, this argument that the shipowner was *in pari delicto* first saw the light on this appeal.

It was not brought forth in the trial of the action. No evidence was introduced as to the negligence of the ship; the stevedore's defense being solely its own freedom from negligence. Thus the argument is untimely.

Moreover, the shipowner's complaint was phrased not only in terms of negligence but also in terms of a breach of warranty. Under the stevedoring contract the third-party defendant impliedly warranted to perform the work in a competent and safe manner. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., 1956, 350 U.S. 124, 76 S.Ct. 232, 100 L.Ed. 133. It is clear this warranty was breached. That the shipowner failed to discover and correct the improper stow is no defense. Ryan Stevedoring Co. v. Pan-Atlantic Steamship Corp., supra.

The judgment is affirmed.