Roy HUGEV, Plaintiff,

v.

DAMPSKISAKTIESELSKABET INTER-
NATIONAL, a corporation,
Defendant.

DAMPSKISAKTIESELSKABET INTER-
, NATIONAL a corporation, Third-
Party Plaintiff,

v.

METROPOLITAN STEVEDORE COM-
PANY, Third-Party Defendant.

Civ. No. 20340.

United States District Court
S. D. California,
Central Division.

Jan. 21, 1959.

**604**

Mitchell Levy, Hollywood, Cal., for plaintiff.

Lillick, Geary, McHose, Roethke & Myers and Gordon K. Wright, Los Angeles, Cal., for defendant and third-party plaintiff.

Cooper, White & Cooper and George A. Helmer, San Francisco, Cal., for third-party defendant.

MATHES, District Judge.

Plaintiff commenced this action in the State court under the "saving to suitors" clause [28 U.S.C. § 1333(1)] to recover damages for personal injuries alleged to have been sustained on April 19, 1955, as a proximate consequence of unseaworthiness and negligence, while plaintiff was working as a longshoreman engaged in discharging cargo from defendant's M S Castleville docked in navigable waters at the Port of Los Angeles. Pope & Talbot v. Hawn, 1953, 346 U.S. 406, 409, 411, 419, 74 S.Ct. 202, 98 L.Ed. 143; Williams v. Tidewater Associated Oil Co., 9 Cir., 1955, 227 F.2d 791, certiorari denied, 1956, 350 U.S. 960, 76 S.Ct. 348, 100 L.Ed. 834.

Defendant shipowner, a Norwegian corporation, filed a timely petition for removal of the case, upon the ground of diversity of citizenship, to the law side of this court. 28 U.S.C. § 1442; Hill v. United Fruit Co., D.C.S.D.Cal. 1957, 149 F.Supp. 470, 472.

Following removal, the shipowner filed a third-party complaint against Metropolitan Stevedoring Company, a California corporation, as third-party defendant, alleging *inter alia:* (1) that at the time and place of any injury to plaintiff, third-party defendant was engaged in discharging cargo from the M S Castleville pursuant to a written contract with defendant shipowner; (2) that plaintiff was then and there employed by third-party defendant and working as a longshoreman in discharging the cargo pursuant to the contract; and (3) that if at the time of any injury to plaintiff, the ship was in anywise unseaworthy or if the place where plaintiff was working was in an "unsafe and dangerous condition", such was caused or permitted to continue to exist "solely by reason of the acts of omission or commission of said third-party defendant, its agents, servants and employees."

Wherefore defendant shipowner as third-party plaintiff demanded judgment against third-party defendant stevedoring contractor "for all sums that may be adjudged in the first instance against defendant and in favor of plaintiff." Fed.R.Civ.P. 14(a), 28 U.S.C.

The stevedoring contractor-employer answered joining issue on the third-party complaint, and at pre-trial conference the parties stipulated that: plaintiff is a citizen of California; defendant and third-party plaintiff is a Norwegian corporation and the owner of M S Castleville; third-party defendant is a California corporation, and on April 19, 1955, was conducting stevedoring operations on board the M S Castleville for the shipowner pursuant to a written contract; while employed as a longshoreman by the stevedoring contractor and while working aboard the M S Castleville "moored in the navigable waters of the United States of America", plaintiff was injured on April 19, 1955; the stevedoring contractor-employer paid to plaintiff pursuant to the Longshoremen's and Harbor Workers' Compensation Act [33 U.S.C.A. §§ 901–950], but not "under an award in a compensation order" [Id. § 933(b)], the sum of $175 as compensation [Id. § 914(a)], and the sum of $306.65 for medical services and supplies, in accordance with the Act. Id. § 907. It was conceded also that plaintiff had duly elected, under § 33(a) of the Act [33 U.S.C.A. § 933(a)], to sue defendant shipowner. See Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 127, 128, 144, 76 S.Ct. 232, 100 L.Ed. 133.

At the trial plaintiff presented a stipulation signed by defendant shipowner, as follows: "That on April 19, 1955, the M S Castleville was unseaworthy due to insecure hatchboards at No. 1 hatch, and that as a result of said condition plaintiff did fall and sustain personal injuries" [cf. Crumady v. The Joachim Hendrik Fisser, 3 Cir., 1957, 249 F.2d 818, certiorari granted, 357 U.S. 903, 78 S.Ct. 1150, 2 L.Ed.2d 1154; 79 S. Ct. 445]; and "That plaintiff has been damaged in the sum of $2,000 exclusive of the benefits received by him under the * * * Act and provided to him by [the stevedoring contractor-employer] Metropolitan Stevedore Company."

With this stipulation, both plaintiff and defendant rested. Thereupon defendant shipowner, as third-party plaintiff, presented the testimony of plaintiff longshoreman and rested, and third-party defendant stevedore contractor presented testimony from its employee, the ship foreman or "boss" at the time of the accident, and rested.

From the facts as stipulated and the evidence thus adduced, it appears that at the time the cargo was loaded at a foreign port the "queen beam" belonging in the No. 1 *main* deck hatch was erroneously placed under the hatch boards on the forward section of No. 1 'tween deck hatch. Since the slots did not fit, this error caused the hatch boards on the forward section of No. 1 'tween deck hatch to wobble or seesaw and to be insecure, and to give way when plaintiff walked thereon in the performance of his duties. As a result plaintiff fell through the 'tween deck hatch into the hold below, sustaining injuries to his right hand and arm.

Prior to the accident, the contracting stevedore, through its ship foreman, became aware of the misplaced "queen beam" and the insecure hatch boards covering the forward section of No. 1 'tween deck hatch, ordered the stevedoring work halted, and complained of the condition to the ship's mate in charge. The mate made an inspection, told the stevedore's foreman that the wrong "queen beam" had been put in place at another port, and instructed the ship boss to clear the cargo of bales of sponge rubber from the hatch boards covering the forward section of No. 1 'tween deck hatch, then remove the hatch boards, substitute the proper "queen beam", and replace the hatch boards securely. Following this inspection and authorization by the mate, the stevedore's foreman ordered the longshoremen to proceed accordingly.

The contract between the shipowner and the stevedoring company, as independent contractor, was received in evidence, and provides for "all loading and discharging of all cargo in vessels owned or operated by" the shipowner, the "handling of dunnage", and the "initial

and final handling of hatch beams, hatch-covers * * *", at agreed "Commodity Rates" covering all time, including "lost or standby time", spent by the stevedore company in doing the work, with compensation for "extra labor when authorized by ship's officers * * *."

As was the case with all the stevedoring company's work under the contract with the shipowner, the mode and manner and method to be adopted in clearing the baled rubber cargo from the hatch boards were matters exclusively within the discretion of third-party defendant. See McGeeney v. Moran Towing Corp., 2 Cir., 1945, 149 F.2d 791, 793.

Unnecessarily, as the work proceeded, the stevedoring contractor's foreman required or permitted the longshoremen, including plaintiff, to walk upon and across the wobbly hatch boards covering the forward section of No. 1 'tween deck hatch. As a result, while plaintiff was engaged in helping with the work of clearing the hatch boards of cargo, one of the insecure hatch boards upon which he stepped gave way, permitting him to fall into the hold below, thereby sustaining permanent deforming injuries to one of the fingers of his right hand.

■ In electing an unsafe method of clearing the cargo from the hatch boards, third-party defendant stevedoring contractor was negligent, and such negligence, as well as the conceded unseaworthiness of the No. 1 'tween deck hatch, was a proximate cause of plaintiff's injuries. The evidence does not establish any negligence on the part of defendant shipowner, or any contributory negligence on the part of plaintiff longshoreman.

■ Defendant shipowner now advances two contentions: first, as to plaintiff's complaint, that the stevedore employer is not entitled to reimbursement for—hence plaintiff is not entitled to recover—the $481.65 paid to plaintiff as compensation and medical expense under the Longshoremen's and Harbor Workers' Compensation Act; and, second, as to the third-party complaint, that the shipowner is entitled to a judgment against the stevedoring contractor for the amount of any judgment awarded plaintiff.

The gist of the argument in support of defendant's first contention is that, since the stevedoring contractor-employer's negligence was one of the proximate causes of plaintiff's damage, the negligent employer should not be entitled to reimbursement at the shipowner's expense out of plaintiff's recovery from the shipowner.

That identical argument was advanced by the shipowner, and considered by the Supreme Court, in Pope & Talbot, Inc. v. Hawn, supra, 346 U.S. at pages 411–412, 74 S.Ct. at page 206. The Court there said: " * * * [The shipowner] Pope & Talbot says that if [the injured longshoreman] Hawn keeps the money [paid under the Act] he will have a double recovery and that to allow him to repay [his employer] Haenn would give an unconscionable reward to an employer whose negligence contributed to the injury. A weakness in this ingenious argument is that § 33 of the Act has specific provisions to permit an employer to recoup his compensation payments out of any recovery from a third person negligently causing such injuries. Pope & Talbot's contention if accepted would frustrate this purpose to protect employers who are subjected to absolute liability by the Act. Moreover, reduction of Pope & Talbot's liability at the expense of Haenn would be the substantial equivalent of contribution which we declined to require in the Halcyon case [Halcyon Lines v. Haenn Ship Corp., 1952, 342 U.S. 282, 72 S.Ct. 277, 96 L. Ed. 318]." 346 U.S. at page 412, 74 S. Ct. at page 206.

If as between a negligent shipowner [346 U.S. at page 408, 74 S.Ct. at page 204] and a negligent employer, there can be no ground for denying the latter reimbursement at the expense of the former [Pope & Talbot, Inc. v. Hawn,

supra, 346 U.S. at page 412, 74 S.Ct. at page 206], by parity of reasoning the same result should obtain where, as in the case at bar, the question as to who is principal and who is surety arises between a negligent employer liable to the longshoreman under the Act irrespective of fault and a non-negligent shipowner also liable irrespective of fault because of a breach of the implied warranty of seaworthiness. 33 U.S.C.A. §§ 914(a), 933(a); cf. Chapman v. Hoage, 1936, 296 U.S. 526, 529, 56 S.Ct. 333, 80 L.Ed. 370; see Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra, 350 U.S. at pages 127, 128, 140, 76 S.Ct. at pages 234, 235, 241.

Although the opinions of the trial and appellate courts do not disclose it, an examination of the record in Pope & Talbot, Inc. v. Hawn, supra, 346 U.S. at page 406, 74 S.Ct. at page 202, reveals that there, as here, the injured longshoreman was paid compensation and furnished medical service by the employer without any formal award being made under the Act. See D.C.E.D.Pa.1951, 99 F.Supp. 226; D.C.E.D.Pa.1951, 100 F. Supp. 338; 3 Cir., 1952, 198 F.2d 800.

It follows then that the employer at bar, having paid benefits under the Act without "an award in a compensation order" [Id. § 933(b); cf. Id. § 914(a)], is entitled to reimbursement out of the employee's recovery, and to that end is to be subrogated *pro tanto* to the rights of the employee against the "third person" to the extent of the payments so made. The Etna, 3 Cir., 1943, 138 F. 2d 37; cf. Chapman v. Hoage, supra, 296 U.S. at page 529, 56 S.Ct. at page 334. Accordingly, third-party defendant employer is entitled to reimbursement to the extent of $481.65 out of the judgment for $2,481.51 to be awarded plaintiff longshoreman upon his complaint against defendant shipowner. Fed.R.Civ.P. 54 (c); cf. The Etna, supra, 138 F.2d at pages 41–42.

■ Turning now to the third-party complaint for "indemnity" [cf. Pope & Talbot, Inc. v. Hawn, supra, 346 U.S. at page 408, 74 S.Ct. at page 204], although the pleading as drawn sounds in tort, it appears settled that the shipowner cannot recover over against the stevedoring contractor upon any tort theory. Weyerhaeuser S.S. Co. v. Nacirema Co., 1958, 355 U.S. 563, 569, 78 S.Ct. 438, 2 L.Ed. 2d 491; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., 1956, 350 U.S. 124, 128–132, 76 S.Ct. 232, 100 L.Ed. 133; Halcyon Lines v. Haenn Ship Corp., supra, 342 U.S. at pages 285–286, 72 S.Ct. at pages 279–280; Considine v. Black Diamond S.S. Corp., D.C.D.Mass.1958, 163 F.Supp. 109; 33 U.S.C.A. § 905.

■ While the shipowner's liability to the individual longshoreman may be said to be predicated upon principles of tort liability [cf. Strika v. Netherlands Ministry of Traffic, 2 Cir., 1950, 185 F. 2d 555, 558, certiorari denied, 1951, 341 U.S. 904, 71 S.Ct. 614, 95 L.Ed. 1343], the authorities hold that the shipowner's so-called right to indemnity, absent express provisions of contract [A/S J. Ludwig Mowinckels Rederi v. Commercial Stevedoring Co., 2 Cir., 1958, 256 F.2d 227], is nothing more or less than a right to recover damages for breach by the stevedoring company of an implied-in-fact obligation of the stevedoring contract. Weyerhaeuser S.S. Co. v. Nacirema Co., supra, 355 U.S. at page 567, 78 S.Ct. at page 441, note 5; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra, 350 U.S. at pages 132–135, 76 S.Ct. at pages 236–238.

Mr. Justice Burton declared for the Court in Ryan that: "The shipowner's action is not changed from one for a breach of contract to one for a tort simply because recovery may turn upon the standard of the performance of * * * stevedoring service." 350 U.S. at page 134, 76 S.Ct. at page 237.

And Mr. Justice Clark pointed out in Nacirema that "in the area of contractual indemnity an application of the theories of 'active' or 'passive' as well as 'primary' or 'secondary' negligence is inappropriate." 355 U.S. at page 569, 78 S.Ct. at page 442; and see Revel v.

American Export Lines, D.C.E.D.Va. 1958, 162 F.Supp. 279, 286.

■ While the express words of the contract between the shipowner and the contracting stevedore at bar do no more than obligate the latter to "perform all loading and discharging of all cargo", it was held in Ryan that such an agreement necessarily includes the implied-in-fact obligation to load and discharge cargo "properly and safely". "Competency and safety", the Court pointed out, "are inescapable elements of the service undertaken." Hence this obligation "is not a quasi-contractual obligation implied in law or arising out of a non-contractual relationship. It is of the essence of * * * [the] stevedoring contract." 350 U.S. at page 133, 76 S. Ct. at page 237.

Thus the obligation is one implied in fact, and not in law, and the content of this implied-in-fact obligation on the part of the stevedoring contractor is to perform the stevedoring service for his customer, the shipowner, in a workmanlike manner and with reasonable safety to persons and property. Weyerhaeuser S.S. Co. v. Nacirema Co., supra, 355 U.S. at page 565, 78 S.Ct. at page 440; Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra, 350 U.S. at page 134, 76 S.Ct. at page 237. Also to pay to the shipowner all "foreseeable damages resulting to the shipowner from the contractor's improper performance." 350 U.S. at page 129, 76 S.Ct. at page 232, note 3; cf. Reddick v. McAllister Lighterage Line, 2 Cir., 1958, 258 F.2d 297; certiorari denied, McAllister Lighterage Line, Inc. v. John T. Clark & Son, Inc., 79 S.Ct. 235.

■ The stevedoring company's implied-in-fact contractual obligation to perform its duties with reasonable safety embraces not only the handling of cargo, but "the use of equipment incidental thereto" as well. 355 U.S. at page 567, 78 S.Ct. at page 441. It includes also the duty to suspend the loading or unloading operations on its own initiative, and thus to avoid injury or damage, whenever the stevedore realizes that it would be unsafe under the circumstances to proceed. United States v. Arrow Stevedoring Co., 9 Cir., 1949, 175 F.2d 329, certiorari denied, 1949, 338 U.S. 904, 70 S.Ct. 307, 94 L.Ed. 557; The Adah, 2 Cir., 1919, 258 F. 377, 380; The Robert R., 2 Cir., 1918, 255 F. 37, 39; Smith v. Nicholson Transit Co., D.C.W.D.N.Y.1941, 39 F.Supp. 795, 797. So if the stevedoring contractor renders a substandard performance which foreseeingly leads to the shipowner's liability to a longshoreman, the shipowner would be "entitled to indemnity absent conduct on its part sufficient to preclude recovery." Weyerhaeuser S.S. Co. v. Nacirema Co., supra, 355 U.S. at page 567, 78 S.Ct. at page 441.

■ That is to say, if the stevedoring contractor commits a material breach of its contractual obligation to the shipowner and such breach is a proximate cause of damage to the shipowner, then the stevedoring contractor would be liable for breach of contract to the extent of such damage, unless the shipowner has been guilty of a material breach of the contract. Cf. Oleszcuk v. Calmar S.S. Corp., D.C.D.Md.1958, 164 F.Supp. 628, 633.

■ Here it is clear from the facts found that third-party defendant stevedoring contractor breached its implied-in-fact contractual obligation to discharge the cargo in a workmanlike manner and with reasonable safety to persons and property, and that such breach was a proximate cause of plaintiff's injuries and the resulting recovery from and damage to the shipowner. Hence the shipowner is entitled to recover "indemnity" from the stevedoring contractor—reparation in the form of damages for the breach of contract—provided the shipowner fully performed its material obligations under the contract. Restatement, Contracts § 397 (1932).

Defendant shipowner admits owing an implied warranty of seaworthiness to

plaintiff longshoreman, and a breach of that warranty "due to insecure hatch boards at No. 1 hatch"; also that such breach was one of the proximate causes of plaintiff's injuries. But the ship-owner asserts that this unseaworthy condition did not constitute a breach of any obligation owed by the shipowner to the stevedoring contractor.

■ The implied warranty of the shipowner as to seaworthiness, first raised by law in favor of the shipper of cargo [The Caledonia, 1895, 157 U.S. 124, 130, 15 S.Ct. 537, 39 L.Ed. 644], later extended to seamen [The Osceola, 1903, 189 U.S. 158, 23 S.Ct. 483, 47 L.Ed. 760, and still later to longshoremen [Seas Shipping Co. v. Sieracki, 1946, 328 U.S. 85, 89–94, 66 S.Ct. 872, 90 L.Ed. 1099], does not extend to the stevedoring contractor. Those considerations of reason and policy which prompted extension of the benefit of the warranty to the individual longshoreman, absent any contractual relationship, do not exist with respect to his employer, the contracting stevedore. Cf. Kermarec v. Compagnie Generale Transatlantique, 2 Cir., 1957, 245 F.2d 175, certiorari granted, 1957, 355 U.S. 902, 78 S.Ct. 335, 2 L.Ed.2d 259; 79 S.Ct. 406.

■ The stevedoring contractor represents himself to be, and is assumed to be, expert and experienced in the work of loading and unloading cargo, while the individual longshoreman may or may not be. Moreover, since predicated upon principles of tort liability rather than contract, the obligations imposed by law upon the shipowner in favor of an individual longshoreman coming aboard ship to work in loading or unloading the cargo are quite different from the obligations of the shipowner in favor of the longshoreman's employer arising from the stevedoring contract. It is necessary, then, to look to the stevedoring contract to learn what obligations are there imposed upon the shipowner—not by law, but by contract—in favor of the stevedore employer.

■ Where, as here, the terms of the stevedoring contract do not expressly impose upon the shipowner any material obligation beyond that of payment to cover the stevedoring service, all additional contractual obligations on the part of the shipowner must, as with the stevedores in Ryan and Nacirema, be implied in fact from the inferences necessarily arising out of the circumstances surrounding the contract and its performance. Cf. Weinstock, The Employer's Duty to Indemnify Shipowners for Damages Recovered by Harbor Workers, 103 U. of Pa.L.Rev. 321, 342–346 (1954).

■ The stevedoring agreement is a maritime contract [Atlantic Transport Co. of West Virginia v. Imbrovek, 1914, 234 U.S. 52, 61–62, 34 S.Ct. 733, 58 L. Ed. 1208], so any obligations to be implied as in fact arising from the contract should take cognizance of the maritime considerations involved. Ships, as well as seamen and longshoremen, are subject to the "hazards of maritime service." Ships still break up at sea. Even though the ships of today may not be as vulnerable, the typhoons of our day are as "formidable and swift" as when Conrad wrote. The Pacific Coast is as treacherous now as it was some two generations ago when the Nottingham was battered into a hulk off the Oregon coast. The Nottingham, 9 Cir., 1916, 236 F. 618.

In almost every instance, when a stevedoring contractor commences the work of loading or unloading a seagoing vessel, the ship has arrived in port only a few hours before. She may have been at sea for weeks or months. Almost always, she has ridden some heavy seas. Often she may have rolled and pitched through mountainous seas for days, taken thousands of tons of water over her decks, sailed through freezing and tropical weather, and been beaten by 100 mile an hour gales. Almost surely she will have been serviced by stevedores of varying degrees of competency in other parts throughout the world.

Being a mass of plates, pipes, wires, beams and various mechanisms, each to some degree vulnerable to the elements, it would be much too much to expect a cargo vessel to arrive in port with all equipment, appliances and facilities in a fully seaworthy condition. Especially is this true with respect to the hatches, booms and winches, which are relatively more likely to be in disorder because of the elements, and the abuse and misuse of men as well. It is reasonable to expect, then, that many things may be wrong with a freighter and her equipment and appliances when she arrives in port; that she may well be a place of danger even as she docks. And all of these lurking dangers may be due entirely to the hazards of the ship's service.

The stevedoring contractor knows that the ship has been at sea; that she may be in many respects dangerous to the life and limb of an unskilled person; that if a condition is found which is unsafe for the professional longshoreman, as a rule the contractor can remedy it at the expense of the shipowner; that if the stevedoring operations are thereby delayed, the shipowner normally must pay for standby time.

Stevedoring contractors hold themselves out as being trained and equipped to cope with these conditions and these dangers. To this end, the stevedoring contractor is usually given full use and charge of the ship's loading and unloading equipment and appliances and the cargo hatches and holds. So it is that the stevedoring contractor cannot reasonably expect, and does not expect, to board a vessel which in all respects, as to equipment and appliances as well as hull, is in a seaworthy condition, or even in a reasonably safe condition. Hence it is not reasonable to infer that the shipowner, in executing the stevedoring contract, impliedly covenants that the condition of the ship or of her equipment or appliances will exceed the stevedoring contractor's reasonable expectations.

This is not to suggest that the surrounding circumstances are such as to require the contract to be so construed that the stevedoring contractor boards the vessel wholly at peril. To the contrary, with the shipowner, as with the stevedore, certain obligations are to be implied in fact as being of the essence of the stevedoring contract. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Corp., supra, 350 U.S. at page 133, 76 S.Ct. at page 237.

■ Although admonished in Ryan that resort may not be had to principles of quasi-contract or to the law of torts to ascertain the obligations of the shipowner vis-a-vis the stevedoring contractor, it is helpful in considering the surrounding circumstances of fact and law, in the light of which the stevedoring contract was made, to recall the long-settled rule that the shipowner owes a duty of ordinary care imposed by law toward "persons rightfully transacting business on ships * * *." Pope & Talbot, Inc. v. Hawn, supra, 346 U.S. at page 413, 74 S.Ct. at page 207, note 6; and see e. g.: The Max Morris, 1890, 137 U.S. 1, 13, 11 S.Ct. 29, 34 L.Ed. 586; Leathers v. Blessing, 1882, 105 U.S. 626, 26 L.Ed. 1192; Tidewater Associated Oil Co. v. Richardson, 9 Cir., 1948, 169 F.2d 802.

■ The surrounding circumstances of fact, and that of law just recited, prompt the holding that, absent express provision to the contrary, the shipowner owes to the stevedoring contractor under the stevedoring contract the implied-in-fact obligations: (1) to exercise ordinary care under the circumstances to place the ship on which the stevedoring work is to be done, and the equipment and appliances aboard ship, in such condition that an expert and experienced stevedoring contractor, mindful of the dangers he should reasonably expect to encounter, arising from the hazards of the ship's service or otherwise, will be able by the exercise of ordinary care under the circumstances to load or discharge the car-

go, as the case may be, in a workman-like manner and with reasonable safety to persons and property; and (2) to give the stevedoring contractor reasonable warning of the existence of any latent or hidden danger which has not been remedied and is not usually encountered or reasonably to be expected by an expert and experienced stevedoring company in the performance of the stevedoring work aboard the ship, if the shipowner actually knows or, in the exercise of ordinary care under the circumstances, should know of the existence of such danger, and the danger is one which the shipowner should reasonably expect a stevedoring contractor to encounter in the performance of the stevedoring contract. Cf. Parenzan v. Iino K.K.K., 2 Cir., 1958, 251 F.2d 928, certiorari denied, International Terminal Operating Co. v. Iino Kauin Kaisha, 1958, 356 U.S. 939, 78 S.Ct. 781, 2 L.Ed.2d 814; Amerocean S.S. Co. v. Copp, 9 Cir., 1957, 245 F.2d 291; United States v. Harrison, 9 Cir., 1957, 245 F.2d 911; Southport Transit Co. v. Avondale Marine Ways, 5 Cir., 1956, 234 F.2d 947, 951; American President Lines v. Marine Terminals Corp., 9 Cir., 1956, 234 F.2d 753, certiorari denied, 1956, 352 U.S. 926, 77 S.Ct. 222, 1 L.Ed.2d 161; Berti v. Compagnie De Navigation Cyprien Fabre, 2 Cir., 1954, 213 F.2d 397; Crawford v. Pope & Talbot, Inc., 3 Cir., 1953, 206 F.2d 784, 792; Slattery v. Marra Bros., 2 Cir., 1951, 186 F.2d 134, 139; United States v. Rothschild Int. Stevedoring Co., 9 Cir., 1950, 183 F.2d 181; American Mut. Liability Ins. Co. v. Matthews, 2 Cir., 1950, 182 F.2d 322; United States v. Arrow Stevedoring Co., supra, 175 F.2d at page 331; Calanchini v. Bliss, 9 Cir., 1937, 88 F.2d 82; Cornec v. Baltimore & O. R. Co., 4 Cir., 1931, 48 F.2d 497, 502, certiorari denied, 1931, 284 U.S. 621, 52 S.Ct. 9, 76 L.Ed. 530; Seaboard Stevedoring Corp. v. Sagadahoc S. S. Corp., 9 Cir., 1929, 32 F.2d 886; Bethlehem Shipbuilding Corp. v. Joseph Gutradt Co., 9 Cir., 1926, 10 F.2d 769, 771; 2 Restatement, Torts §§ 360, 332, comment h (1934); 2 Harper & James, The Law of Torts, § 27.17 (1956).

The evidence is not such as to warrant a finding that the shipowner here breached either of these implied-in-fact obligations of the stevedoring contract in any respect. On the contrary, the evidence establishes full performance by the shipowner. Cf. American Mut. Liability Ins. Co. v. Matthews, supra, 182 F.2d at page 324.

Of course, as third-party defendant points out, there is a third implied-in-fact obligation on the part of the shipowner not unreasonably or materially to hinder, delay or interfere with performance of the stevedoring operations. Restatement, Contracts §§ 295, 315 (1932); 4 Corbin, Contracts § 947 (1951). However, there is no evidence of any unreasonable or material prevention of performance on the part of the shipowner in the case at bar. The contract expressly provides that the stevedoring contractor is to be paid on a time basis for service of every kind, including the repair of defects in hatches or other ship appliances and equipment, and that the contractor is to be paid also for standby time due to any delay in the stevedoring operations caused by the shipowner.

Accordingly, the finding must be that the shipowner at bar did not breach, but fully performed, both its express and implied-in-fact obligations to the stevedoring contractor under the contract.

Furthermore, if it were assumed arguendo that the misplaced "queen beam" was a breach by the shipowner, the stevedoring contractor was fully aware of this latent condition prior to plaintiff's injury and nonetheless willingly proceeded with the work despite the known dangerous condition, and hence would be held to have waived the breach. Restatement, Contracts §§ 297, 294 (1932); see American President Lines v. Marine Terminals Corp., supra, 234 F.2d at page 759; cf. Ryan Stevedoring Co. v. Pan-Atlantic S.S. Co., supra, 350 U.S. at pages 134–135, 76 S.Ct. at pages 237–238.

Finally, third-party defendant urges that the shipowner cannot recover

damages on the third-party plaintiff's claim for breach of the stevedoring contract because, the argument goes, the shipowner was a volunteer who needlessly admitted liability and damage and so, in effect, voluntarily settled with plaintiff without contesting liability. The argument is wholly without merit. The shipowner was unquestionably liable to the longshoremen for a plain breach of the implied warranty of seaworthiness. Grillea v. United States, 2 Cir., 1956, 232 F.2d 919, 922. The nature and extent of the resulting damage was equally beyond dispute. The facts as to liability and damage being incontrovertible [cf. Albina Engine & Machine Works, Inc. v. American Mail Line, Ltd., 9 Cir., 263 F.2d 311, note 1], the shipowner is not to be branded a volunteer for conceding them. Ace Tractor & Equipment Co. v. Olympic S.S. Co., 9 Cir., 1955, 227 F.2d 274, 276. In any event, third-party defendant was in no wise prejudiced. Cf. Chapman v. Hoege, supra, 296 U.S. at pages 529–532, 56 S.Ct. at pages 334–336.

For the reasons stated I find that third-party plaintiff shipowner performed its obligations to the stevedoring company under the contract; that third-party defendant stevedoring company, acting through its employees, breached its implied-in-fact contractual obligation to discharge the cargo in a workmanlike manner and with reasonable safety to persons and property; and that such breach by the stevedore was a proximate cause of the injury suffered by plaintiff. ■ As a result of this breach, the shipowner became liable to plaintiff longshoreman for $2,481.65 and costs of suit.

Reparation to the extent of that loss to the shipowner is the measure of the shipowner's damages for the stevedoring contractor's breach. Restatement, Contracts § 330 (1932); 5 Corbin, Contracts §§ 1006, 1007 (1951); 5 Williston, Contracts § 1356 (Rev. ed. 1937); Mowbray v. Merryweather, 2 Q.B. 640 (1895).

■ What has been said may serve as findings of fact and conclusions of law [Fed.R.Civ.P. 52(a)] upon which to predicate (1) judgment in favor of plaintiff longshoreman and against defendant shipowner on the complaint for $2,481.65 and costs, of which $481.65 is to be paid to third-party defendant employer as reimbursement for compensation and medical expense laid out for the account of plaintiff under the Longshoremen's and Harbor Workers' Compensation Act; and (2) judgment on the third-party complaint of the shipowner against third-party defendant stevedoring contractor for damages for breach of contract, in such sum as third-party plaintiff may be required to pay to or for the account of plaintiff in this action, namely, $2,481.65 and costs. Although the third-party complaint does not allege breach of contract as ground for "indemnity" or reparation, the case was tried and submitted for decision on the claim for damages for breach of contract. Fed.R.Civ.P. 54(c); cf: Ryan Stevedoring Co. v. Pan Atlantic S.S. Corp., supra, 350 U.S. at page 141, 76 S.Ct. at page 241; Royal Mail Lines, Ltd. v. Peck and Associated-Banning Co., 9 Cir., —— F.2d ——.

Judgment will be entered accordingly.